2026-1817

# In the United States Court of Appeals For the Federal Circuit

GEM PRODUCTS, LLC,
*Plaintiff-Appellant*

v.

RUPP MARINE, INC.,
*Defendant-Appellee*.

Appeal from the United States District Court for the Southern District of Florida in No. 2:25-cv-14047-DMM, Judge Donald M. Middlebrooks

## RESPONSE BRIEF OF DEFENDANT-APPELLEE RUPP MARINE, INC.


ANDREW D. LOCKTON
EDWARD F. MCHALE
McHALE & SLAVIN, P.A.
*2855 PGA Boulevard*
*Palm Beach Gardens, FL 33410*
*(561) 625-6575*
*alockton@mchaleslavin.com*
*emchale@mchaleslavin.com*

*Counsel for Defendant-Appellee*


August 24, 2026

**U.S. Patent No. 8,656,632 C1, Appx68:**

1. A line management system for a surface vessel, comprising:

an outrigger structure;

a plurality of outrigger cords;

a plurality of cord management units coupled to the outrigger structure, said cord management units being longitudinally spaced one from the other along the outrigger structure, *each of said cord management units including a housing secured by at least one fastener against displacement relative to the outrigger structure*, each of said cord management units defining *and maintaining* a plurality of cord passages transversely offset one from the other, said cord passages respectively guiding predetermined ones of said outrigger cords to extend substantially in parallel to the outrigger structure ~~so as to extend~~, *said outrigger cords thereby extending* through respective ones of said cord passages of at least two of said plurality of cord management units and ~~remain~~ *remaining* independently displaceable longitudinally relative to the outrigger structure; and

a plurality of retention devices, each of said retention devices coupled to one of said outrigger cords, each of said retention devices defining a retention point for advancing a line longitudinally along the outrigger structure responsive to displacement of said one of said 45 outrigger cords.

**U.S. Patent No. 9,392, 778 B1, Appx84:**

1. A method of managing outrigger cords for a surface vessel having an outrigger structure, comprising:

establishing a plurality of outrigger cords;

establishing a plurality of cord management positions longitudinally spaced one from the other along at least a portion of the outrigger structure;

defining at each of said cord management positions within the portion of the outrigger structure a plurality of cord passages transversely offset one from the other, said cord passages respectively guiding predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure, and retaining said cord management positions such that the cord passages extend at fixed angular orientations relative to the outrigger structure;

arranging said cord management positions along the portion of the outrigger structure with consecutive cord management positions within the portion of the outrigger structure respectively guiding a progressively decreasing number of outrigger cords; and,

establishing a plurality of retention devices, each of said retention devices coupled to one of said outrigger cords to define a retention point for advancing a line longitudinally along the outrigger structure responsive to dis placement of said one of said outrigger cords.

**U.S. Patent No. 9,717,226 B1, Appx101:**

1. An outrigger cord management system for a surface vessel having an outrigger structure, comprising:

   a plurality of outrigger cords;

   a plurality of cord management units disposed at respective cord management positions longitudinally spaced one from the other along at least a portion of the outrigger structure, each of said cord management units defining at least one cord passage;

   at least one of said cord management units within the outrigger structure portion defining a plurality of cord passages transversely offset one from the other, wherein said cord passages respectively guide predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure, said at least one cord management unit retaining the cord passages thereof to extend at fixed angular orientations relative to the outrigger structure;

   said cord management units disposed along the outrigger structure portion cooperatively defining consecutive cord management positions respectively guiding a progressively decreasing number of outrigger cords; and,

   a plurality of retention devices each coupled to one of said outrigger cords to define a retention point for advancing a line longitudinally along the outrigger structure responsive to displacement of said one of said outrigger cords.

**U.S. Patent No. 11,589,566 B1, Appx119:**

1. An outrigger cord management apparatus for guiding a plurality of outrigger cords along a longitudinally extended outrigger structure of a surface vessel, the outrigger cords each having coupled thereto at least one retention device, each of said at least one retention device defining a retention point for a line advanced along the outrigger structure responsive to displacement of each of the outrigger cords thereof, the outrigger cord management apparatus comprising:

   at least one outrigger structure extending beyond a surface vessel,

a plurality of outrigger cords,

a plurality of cord management units coupled to said at least one outrigger structure in a spaced apart relationship with one another,

a pivot unit attached to said surface vessel in a spaced relationship with said at least one outrigger structure, each of said outrigger cords being operatively coupled between said pivot unit and at least one respective cord management unit of said plurality of cord management units and forming a cord endless loop configuration, and

a plurality of lines, wherein each of said plurality of lines is removably attached, at one end thereof, to the retention point of a respective said at least one retention device coupled to a respective outrigger cord of said plurality of outrigger cords, wherein a position of said each of said plurality of lines is controlled by displacing the retention point of the respective said at least one retention device longitudinally along said at least one outrigger structure responsive to a controlled displacement of said respective outrigger cord, and wherein said at least one respective cord management unit includes:

a housing portion;

a releasable fastening portion coupled to said housing portion, said releasable fastening portion being configured to fixedly mount said housing portion intermediately along said at least one outrigger structure extending beyond a surface vessel to thereby extend said housing portion laterally from said at least one outrigger structure; and

a rotatable portion rotatably coupled to said housing portion, said rotatable portion defining a plurality of cord passages transversely offset one from the other and configured for respectively independently guiding said each of said plurality of outrigger cords longitudinally along said at least one outrigger structure when said housing portion is mounted thereto;

wherein said housing and rotatable portions are configured to maintain the cord passages about a common axis fixed in angle relative to said at least one outrigger structure when said housing portion is mounted thereto by said releasable fastening portion, and

wherein said rotatable portion is configured to enable said plurality of outrigger cords to be independently and simultaneously controlled for displacement without undue interference of any one of said plurality of outrigger cords with other of said plurality of outrigger cords.

## CERTIFICATE OF INTEREST

Counsel for Appellee Rupp Marine, Inc. certify the following:

1. The full names of the parties represented by undersigned counsel are:

   Rupp Marine, Inc.

2. The name of the real party in interest represented by undersigned counsel is:

   None/Not Applicable.

3. Parent corporations and publicly held companies that own 10% or more of stock in the party are:

   None/Not Applicable.

4. The names of all law firms and partners or associates that appeared for the party now represented by me in the originating court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   None/Not Applicable.

5. The case title, case number, and originating tribunal of any case known to me to be pending in this or any other court or agency that will direct affect or be directly affected by this court's decision in the pending appeal:

   None.

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

   Not Applicable.

## TABLE OF CONTENTS

**Page**


CERTIFICATE OF INTEREST .................... iv

TABLE OF CONTENTS .................... v

TABLE OF CITATIONS .................... vii

STATEMENT OF RELATED CASES .................... 1

INTRODUCTION .................... 1

STATEMENT OF THE ISSUES .................... 5

STATEMENT OF THE CASE .................... 5

A. The Mercier Patents-in-Suit .................... 5

B. Rupp's Accused Products at Issue .................... 9

C. The Summary Judgment Record, GEM's Concessions, and GEM's Failure to Dispute Material Facts .................... 12

1. The Undisputed Factual Record .................... 13

2. GEM's Concessions in Supplemental Authority and During the Summary Judgment Hearing .................... 16

D. The District Corut's Noninfringement Ruling .................... 19

1. No Direct Infringement .................... 19

2. No Contributory Infringement .................... 19

3. No Induced Infringement .................... 22

SUMMARY OF THE ARGUMENT .................... 22

STANDARD OF REVIEW .................... 26

ARGUMENT .................... 28

I. The District Court Correctly Entered Summary Judgment of Noninfringement for Rupp .................... 28

A. This Court Should Not Consider the New Arguments in GEM's Brief That Were Not Presented or Briefed to the District Court in the Summary Judgment Record ........................................ 28

B. The District Court Correctly Limited Its Summary Judgment Order to the Evidence That Was Properly Presented to It in the Summary Judgment Record ........................................ 31

1. The District Court's Reliance on the Karpanty Declaration was Correct ........................................ 31

2. The District Court Correctly Identified That GEM Failed to Dispute the Critical Facts ........................................ 33

3. The District Court Correctly Addressed Only the "Accused Products" That GEM Put at Issue in the Pleadings and Summary Judgment Record ........................................ 36

C. The District Court Correctly Concluded That GEM Failed to Present Evidence of Direct Infringement of Any Patent Claim by a User of Rupp's Accused Products ........................................ 37

D. The District Court Correctly Concluded That Rupp Does Not Contributorily Infringe Any Asserted Patent Claim ........................................ 39

E. Claim Construction Was Unnecessary Below, and GEM Has Not Identified How a Claim Construction Order in Its Favor Would Have Affected the District Court's Ruling ........................................ 45

F. The District Court Correctly Concluded That Rupp Does Not Induce Infringement of any Asserted Patent Claim ........................................ 48

CONCLUSION ........................................ 53

CERTIFICATE OF COMPLIANCE ........................................ 55

CERTIFICATE OF SERVICE ........................................ 55

## TABLE OF AUTHORITIES

Page(s)

Cases

*Access Now, Inc. v. Southwest Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ....................................................27, 29

*Albrechtsen v. Bd. of Regents of Univ. of Wisconsin System*,
309 F.3d 433 (7th Cir. 2002) ............................................................ 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................. 27

*A/S v. Lupin Ltd.*, 87 F.4th 1361 (Fed. Cir. 2023) .................................... 51

*Blue Gentian, LLC v. Tristar Products, Inc.*,
70 F.4th 1351 (Fed. Cir. 2023) .......................................................... 45

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..................................... 26-27

*Commil USA, LLC v. Cisco Sys., Inc.*, 572 U.S. 632 (2015)................. 47-48

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
508 F.3d 641 (11th Cir. 2007) .......................................................... 26

*Depree v. Thomas*, 946 F.2d 784 (11th Cir. 1991) .................................... 27

*Doe v. Magical Cruise Co. Ltd.*,
No. 23-12816, 2024 WL 2649037 (11th Cir. Aug. 5, 2024) ................. 29

*Equal Ground Educ. Fund, Inc. v. Sec'y, Fla. Dep't of State*,
434 So.3d 657 (Fla. 2026) ................................................................. 53

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ..........48, 51

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
438 F.3d 1354 (Fed. Cir. 2016) ......................................................... 41

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. _, 146 S. Ct. 1391 (2026)...................................................... 51

*Hodosh v. Block Drug Co.*, 833 F.2d 1575 (Fed. Cir. 1987)...................... 43

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ..................................................... 39-40

Cases—continued

*In re Pan Am. World Airways, Inc.*, 905 F.2d 1457 (11th Cir. 1990)......... 28

*Irving v. Mazda Motor Corp.*, 136 F.3d 764 (11th Cir. 1998) .............. 27-28

*Jones v. Kirchner*, 835 F.3d 74 (D.C. Cir. 2016) ...................................... 23

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012)............................. 28

*Keysight Technologies, Inc. v. Centripetal Networks, LLC*,
No. 25-1053, 2026 WL 2097975 (Fed. Cir. Jul. 21, 2026) ................... 23

*Koninklijke Philips N.V. v. Zoll Med. Corp.*
656 Fed. Appx. 504 (Fed. Cir. 2016) ..................................17, 38, 47-48

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009)....... 28

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)........................................................................... 51

*Michael Linet, Inc. v. Village of Wellington*,
408 F.3d 757 (11th Cir. 2005) ............................................................ 29

*Mirror Worlds Tech., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ....................................................... 26-27

*Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 Fed. Appx. 701 (Fed. Cir. 2021) . 23

*Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365 (Fed. Cir. 2023) ....... 23

*Pipes v. United States*, 123 F.4th 1324 (Fed. Cir. 2024) ........................... 23

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
843 F.3d 1315 (Fed. Cir. 2016) .......................................................... 50

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
30 F.4th 1109 (Fed. Cir. 2022) ...................................................... 50-51

*Rodriguez v. Marble Care Int'l, Inc.*,
863 F. Supp. 2d 1168 (S.D. Fla. 2012)................................................. 53

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) .......................................................... 45

Cases—continued

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998)........................................ 29

*Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corp.*, 785 F.3d 625 (Fed. Cir. 2015) ........................................................ 51

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) ...................... 50

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012).... 38,40-41

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991)............................. 23

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671 (Fed. Cir. 2015) ........................................................... 26

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) .................................................... 39-41

*Walker v. Jones*, 10 F.3d 1569 (11th Cir. 1994)....................................... 27

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949 (11th Cir. 2009)........ 28-29

Statutes

Patent Act of 1952, 35 U.S.C. § 1 *et seq.*

35 U.S.C. § 101................................................................................ 45
35 U.S.C. § 102.................................................................................. 8
35 U.S.C. § 103.............................................................................. 7-8
35 U.S.C. § 112.................................................................................. 8
35 U.S.C. § 271(c) .......................................................................... 39

Rules

Federal Rules of Civil Procedure

Fed. R. Civ. P. 56(a)....................................................................... 27
Fed. R. Civ. P. 56(c)....................................................................... 26
Fed. R. Civ. P. 56(c)(4) ................................................................... 31

Southern District of Florida Local Rules
S.D. Fla. L.R. 56.1 .............................................................. 33
S.D. Fla. L.R. 56.1(a) .............................................................. 4
S.D. Fla. L.R. 56.1(b) .............................................................. 4
S.D. Fla. L.R. 56.1(b)(1) .............................................. 13, 34, 48
S.D. Fla. L.R. 56.1(b)(1)(A) .................................................... 33
S.D. Fla. L.R. 56.1(b)(1)(B) .................................................... 31
S.D. Fla. L.R. 56.1(b)(2) .............................................. 13, 34, 48
S.D. Fla. L.R. 56.1(b)(2)(A) ............................................... 13, 33
S.D. Fla. L.R. 56.1(b)(2)(B) ............................................... 13, 34
S.D. Fla. L.R. 56.1(b)(2)(C) ............................................... 13, 34
S.D. Fla. L.R. 56.1(b)(2)(D) .................................................... 13
S.D. Fla. L.R. 56.1(c) ................................................... 4, 13, 34

Other Authorities

1 W. Gordon, The History of the Rise, Progress, and Establishment, of the Independence of the United States of America (1788) ......................... 53

## STATEMENT OF RELATED CASES

Defendant-Appellee Rupp Marine, Inc. (Rupp) and its Counsel are not aware of other related or pending cases that will directly affect or be affected by this Court's decision in the pending appeal.

## INTRODUCTION

GEM Products LLC (GEM) failed in every way before the district court. GEM built its case on *allegations* of infringement and attorney argument, but it never provided *a factual basis* to support those allegations, and it *never disputed* the material facts presented by Rupp, which was necessary at summary judgment. The district court correctly concluded that Rupp does not infringe any asserted claim because the *undisputed* facts established Rupp's noninfringement. On appeal, GEM's Opening Brief (CAFC Dkt. 8, "Blue.Br.") incorrectly argues that there were disputes of fact that precluded summary judgment. Blue.Br.31–41. GEM is simply wrong; GEM *never disputed* the critical facts below. GEM's appeal is an attempt to present *new arguments* and argue the existence of "subcategories" of the Accused Products that *it never presented* to the district court in the summary judgment record. *See* Blue.Br.31–41. That is not proper for an appeal. The summary judgment order should be affirmed.

GEM's brief attempts to overcomplicate what is a simple and straightforward case. Rupp's products have substantial non-infringing uses—even under GEM's infringement theories. Rupp offers for sale and sells outriggers that have eyebolts; GEM concedes those products have substantial noninfringing uses. *See* Appx11. Rupp offers for sale and sells two (2) pulley cluster models at

issue, product numbers CA-0145 and CA-0146. Appx6. GEM conceded that those products can be used independently of outriggers because, after all, they are simply pulley blocks with two (2) and (3) sheaves, respectively. *See* Appx7494 (34:8–25). Rupp also offers for sale and sells different sets of "clamp pulleys". Appx6. But all of Rupp's pulleys are advertised for noninfringing uses, including on an outrigger, including where only a single halyard line and single "retention device" is used, Appx7, i.e., without the "plurality" of halyard lines and "plurality" of "retention devices" required by the claims.

Moreover, none of Rupp's pulleys—as offered for sale and sold by Rupp—attach (when used on an outrigger) so that the pulley housing is "fixed" to the outrigger or where the housing is "fastened" (bolted) directly to the outrigger. Appx9–Appx13. GEM's technical expert explained that the direct attachment of the pulley housing to the outrigger by "at least one fastener," e.g., a bolt, is what distinguishes the claims of the '632 patent from the prior art and results in the "fixed" limitations throughout all of the asserted patent claims. Appx5892–Appx5894 (107:18–115:10). The inventor, Craig Mercier, confirmed during his various prosecutions that having a moveable pulley attached to an outrigger "negates" multiple limitations within the claims of the asserted patents. *E.g.*, Appx1271–Appx1273 ('632 reexamination); Appx898–Appx901 ('778 prosecution); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary). Mercier then confirmed, when deposed by GEM, that Rupp's pulleys, while similar to his invention, did not "fit the bill." Appx2634–Appx2636 (69:17–75:1).

GEM does not identify an error in the district court's summary judgment ruling. Rather, GEM tries to re-litigate this case with new/different arguments, after failing below with the evidence and arguments it presented to the district court. If the district court had overlooked evidence, GEM would be able to point directly to its response statement of material facts to show that it cited evidence to create a genuine dispute. GEM cannot do that because GEM did not cite evidence to create a genuine dispute in the proceedings before the district court. GEM never disputed the critical facts and it failed to develop *evidence* to support its claims.

In a thorough and well-reasoned analysis, the district court synthesized the voluminous material into a clear and straightforward decision, finding that the only products offered for sale or sold by Rupp are staple articles of commerce capable of substantial non-infringing use and that Rupp does not induce any third party to infringe. Appx8–Appx14. As the patentee, it was GEM's burden to produce evidence in response to Rupp's summary judgment motion, the local rules required specific citations of evidence in GEM's response statement of material facts to create factual disputes. *See* S.D. Fla. L.R. 56.1. GEM, however, failed to dispute the material facts. Appx3–Appx4 and n.1 (addressing GEM's failure to dispute facts); Appx6–8 (undisputed facts).

On appeal, just as in its motion for reconsideration, GEM highlights errors in its own presentation of its case, not error in the district court's ruling. If GEM has presented evidence below that supported the arguments it now makes on appeal, it would cite its response statement of material facts, identifying for this

Court where, exactly, it presented the evidence and argument to the district court to create a genuine dispute. GEM's brief does not do that, because GEM did not present such evidence to the district court. GEM's reconsideration motion similarly highlighted GEM's failure to meet its burden on summary judgment. Rather than identify to the district court that it disputed the material facts, GEM's reconsideration motion attempts to go *outside* of the summary judgment record to create factual disputes. *See* Appx7420–Appx7421. Having to go outside of the record it presented to the district court only demonstrates that GEM failed to submit the necessary evidence when required.

GEM maintains that approach on appeal, highlighting its failure to establish facts in the summary judgment record to support its arguments. Comparing Rupp's statement of material facts, Appx5244–Appx5249 (¶¶19–62) to GEM's response statement, Appx6717–6722 (¶¶19–62), as the district court was required to do, *see* S.D. Fla. L.R. 56.1(a)–(b), the district court correctly held that GEM did not dispute the material facts, Appx3–Appx8 and n.1; *see also* S.D. Fla. L.R. 56.1(c) (undisputed facts are deemed admitted if not controverted with specific citations to evidence).

Ultimately, the case remains simple and straightforward, despite GEM's attempts to overcomplicate the matter. Rupp only sells staple articles of commerce with substantial non-infringing uses and there are no "instructions" or "directions" that GEM can cite that supports its claim of active inducement. Even under GEM's infringement theories, Rupp's products are staple articles of commerce with noninfringing uses. That is why GEM tried to change its theory

at the last minute to argue the "infringing feature" is the result of end user *modifications* to Rupp's products, *see* Appx7392; *see also* Appx7395, and why GEM "is not appealing" the district court's noninfringement finding with respect to Rupp's moveable pulley clusters, *see* Blue.Br.13–14.

## STATEMENT OF THE ISSUES

1. The district court correctly held that GEM failed to provide evidence of direct infringement, thereby precluding GEM's claims for indirect infringement.

2. The district court correctly granted summary judgment based on the undisputed factual record, without the need for claim construction, because GEM failed to dispute the material facts and failed to introduce evidence to support its case.

3. The district court correctly held that the undisputed facts established that all of Rupp's products at issue are staple articles of commerce with substantial non-infringing uses, it addressed the products that Rupp actually offers and sells, the only products which GEM identified to the district court as being at issue.

4. The district court correctly held that the undisputed facts established that Rupp does not actively induce infringement of any asserted claim.

## STATEMENT OF THE CASE

### A. The Mercier Patents-in-Suit.

The asserted patents are not for pulleys, or even for outriggers with pulleys. Mercier did not invent a new kind of pulley and did not invent an outrigger

with pulleys on it to assist fishing. The asserted patents claim a "line management system," or a "method of managing outrigger cords for a surface vessel," where each claim includes at least an outrigger, a plurality of "cord management units," a plurality of halyard lines where each halyard line also included a "retention device." *See, e.g.*, Appx65–Appx66 ('632 patent, 11:55–14:28), Appx68 ('632 patent reexamination certificate 1:20–2:58); Appx101–Appx102 ('226 patent, 12:8–14:56); Appx119–Appx121 ('566 patent, 12:7–16:23).

Though the patents only reference outriggers with eyebolts as being prior art, *see* Appx60 (1:12–2:67), it was well-known in the industry, and known to Mercier, that pulleys were used on outriggers to manage halyard lines. Mercier got the idea for his patents because everyone had moveable/swinging pulleys on their outriggers and he did not "understand why people didn't make them with a fixed pulley instead of" pulleys like those offered by Rupp. Appx2631 (55:7–20) (contrasting Appx365); *see also* Appx2630 (51:6–19) ("And it used to get on my nerves for years, fishing, when my rigger line would swing and --- on a boat. So that's how I got the idea."); Appx2629 (47:7–23) (Rupp's pulleys "rocked side to side. So [Rupp] started to make something similar to [Mercier's idea], but it wasn't the same."); Appx2634–Appx2636 (69:17–75:1) (Rupp's pulleys rock/tilt side-to-side and, therefore, did not "fit the bill" of the invention) (referencing Appx2629). GEM's technical expert, John Lloyd, also confirmed that he personally, and others in the industry, were using pulleys on outriggers to manage halyard lines as far back as the 1990s. Appx5869 (14:2–17:23); Appx5871–Appx5872 (22:1–29:3).

Mercier's invention was the obvious[1] change of using a "fixed pulley" instead of a moveable pulley. Appx2631 (55:7–20); *see also* Appx2630 (51:6–19); Appx2629 (47:7–23); Appx2634–Appx2636 (69:17–75:1). Because Mercier did not disclose that prior art systems already used pulleys, those prior art pulley systems were not addressed until the '632 patent was reexamined in 2015 and the claim language was required to be modified to distinguish from those existing systems. *See, e.g.*, Appx1260–Appx1262 (claim modification); Appx1269–Appx1273 (arguments to distinguish prior art); Appx1219–Appx1220 (USPTO interview summary); Appx1221–Appx1228 (further claim modification). Similar changes were also made at the same time to the application that would issue as the '778 patent. *See, e.g.*, Appx899–Appx901 (interview summary); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary noting the addition of "fixed angular orientation" language because prior art "allows movement of the pulley relative to the outrigger structure that does not result in fixing the orientation of the cord passages."). Those amendments were continued in the as-filed claims that resulted in the '226 patent. Appx1671–Appx1677.

When Mercier filed the application for the '566 patent, however, he tried to broaden his invention and claim only the "cord management unit", i.e., the

[1] The district court did not reach the issue of obviousness. Rupp, however, maintains its position that the change from a pulley being indirectly attached to a bolt (eyebolt) on an outrigger, and being directly bolted to the outrigger, is an obvious change to those of skill in the art and Rupp maintains that all asserted claims should be held invalid under, at least, 35 U.S.C. § 103.

"fixed pulley" that he believed was different from the prior art outrigger-pulley systems. Appx2320–Appx2322; *see also* Appx2139–Appx2146 (preliminary amendment). But Mercier's "cord management unit" was not patentably distinct from the prior art. *See, e.g.*, Appx2000–Appx2006 (office action rejections under §102, §103, §112); Appx1982–Appx1994 (amendments and argument); Appx1946–1952 (office action rejections under §103); Appx1925–Appx1936 (amendments and argument); Appx1902–Appx1907 (office action rejections under §103); Appx1878–1890 (amendments and argument); Appx1786–Appx1796 (office action rejections under §103).

After Mercier's repeated attempts to claim only a "cord management unit" were unsuccessful, the claims were amended to require significantly more structural elements, including an outrigger extending off of a boat, a plurality of "outrigger cords" (i.e., halyard lines), a plurality of "cord management units," a "pivot unit," and a plurality of fishing lines removably attached to a "retention device" on each halyard line. *See, e.g.*, Appx1761–1768 (claim amendments); Appx119–Appx121 ('566 patent, 12:7–67, 13:34–14:27, 145:42–16:12)

As a result, all claims of the Mercier patents ended up claiming an arrangement of prior art components, used in the same way as the prior art systems, with only a minor difference. GEM's expert explained that, in his opinion, the difference between the Mercier invention and the prior art was that the Mercier pulley housings were directly attached to the outriggers. Appx5892–Appx5894 (107:18–115:10). That direct connection is a requirement of the "fixed" aspect required by each of the claims. *See, e.g.*, Appx1271–Appx1273

(a pulley that can move in response to halyard line tension "negates any notion of defining a plurality of cord passages[] which are 'transversely offset' from one another, and each 'maintained in fixed angular orientation relative to the outrigger structure'" as required in the claims); Appx898–Appx901 ('778 prosecution interview summary addressing "attempt to overcome the cord management positions having cord passages which can move with respect to the portion of the outrigger structure to which they are mounted"); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary noting the addition of "fixed angular orientation" language because prior art "allows movement of the pulley relative to the outrigger structure that does not result in fixing the orientation of the cord passages.").

### B. Rupp's Accused Products at Issue.

Because each of the asserted claims is for the use, or assembly, of an outrigger fishing system that includes multiple discrete components, there is no accused product offered or sold by Rupp that meets all limitations of any claim. Therefore, GEM's claims are for indirect infringement, both that Rupp is offering for sale and selling products that make Rupp a contributory infringer and that Rupp induces others to infringe. *See, e.g.*, Appx372 (Count I); Appx378 (Count II); Appx383 (Count III); Appx389 (Count IV); Appx395 (Count V); Appx404 (Count VI); Appx411 (Count VII); Appx420 (Count VIII).

GEM defined the "Accused Products" at issue in the amended complaint based on its theory of what caused Rupp's contributory infringement, Appx361–Appx362, and confirmed those products' identity in its infringement

contentions, Appx7214–Appx7216. The "Accused Products" included Rupp's "Accused Pulleys," which were Rupp's double pulley cluster product CA-0145, triple pulley cluster product CA-0146, and different sets of clamp pulley products CA-03PC-3X, CA-03PC-2X, CA-04PC-3X, CA-04PC-2X. Appx361; Appx7215; *see also* Appx5440–Appx5453 (engineering files for the "Accused Pulleys"). Rupp's pulley clusters—product numbers CA-0145 and CA-0146—are pulley blocks with two (2) and three (3) sheaves, respectively, and they both include an adjustable polyaxial ball-joint stem that allows the pulley to move in response to halyard line tension. Appx6; Appx5245 (¶¶24–25); Appx5253 (¶¶11–13); Appx5441–Appx5442 (engineering files); Appx5453 (image). Rupp's website explains this feature: "Made using Rupp's exclusive polyaxial design that allows the pulley to self-align, further reducing halyard line wear." Appx5481–Appx5483 (website captures).

Rupp added the polyaxial ball-joint stem to its various pulley clusters in 2015, after learning about Mercier's original '632 patent and filing an *ex parte* reexamination petition so that the USPTO would consider the prior art outrigger-and-pulleys systems. Appx6; Appx543–546 (¶¶35–41); Appx5244–Appx5245 (¶¶22–25); Appx5253 (¶¶9–13). Before this action was filed, GEM's president, Mathew Bridgewater, discussed the addition of that polyaxial ball-joint stem to Rupp's pulley clusters with Joseph Glonek, the New Jersey supervisor of Palm Beach Towers, one of Rupp's largest customers. Appx5664–Appx5666 (amended response to interrogatory 8). Glonek explained to Bridgewater that all of Rupp's pulley clusters come with the polyaxial ball-joint stem and he

explained how it worked, allowing the pulley to articulate and move side-to-side and up-and-down: "You can move it around no problem." *See* Appx2577–Appx2579 (8:1–14:12); Appx2580 (20:12–21:25).

Each of Rupp's clamp pulleys include a pivot connection where the pulley housing is attached to the clamp portion with a set of pins, one fixed and the other that can move through a curved track as the pulley housing pivots. Appx5253–Appx5254 (¶¶18–20); Appx5446–5451.

GEM also defined "Accused Outriggers with Pulleys" as part of the "Accused Products," Appx362; Appx7215–Appx7216, where the outriggers were identified by product numbers as Rupp's outriggers that are offered for sale and sold with eyebolts, Appx5254 (¶¶26–28); *see also* Appx5259–Appx5373 (engineering files for outriggers); Appx371 (¶¶62–63) (GEM acknowledging that customer have to purchase pulleys separate from outriggers). Rupp's sales of outriggers is not a basis for GEM's infringement claims. *See, e.g.*, Appx6013 ("GEM is not asserting that Rupp's outriggers *without pulleys* cause Rupp's infringement. So, whether Rupp's outriggers without pulleys have other uses is entirely irrelevant to the contributory infringement assessment – they do not infringe to begin with."); Appx10 n.2 (quoting same). Instead, GEM's theory was that those non-infringing outriggers became an infringing product if pulleys were also ordered by a customer at the same time, so that the outriggers and pulleys arrived together, regardless of whether they arrived as separate products. Appx6527–Appx6528.

### C. The Summary Judgment Record, GEM's Concessions, and GEM's Failure to Dispute the Material Facts

The parties each moved for summary judgment. GEM moved for summary judgment of contributory infringement for claim 1 of the '632 patent. Appx8; *see also* Appx3371–Appx3372. In accordance with the local rules, GEM submitted its statement of material facts in support of its summary judgment motion. Appx3400–Appx3409; *see also* S.D. Fla. L.R. 56.1(a)–(b)(1).

Separately, Rupp moved for summary judgment on all counts of the amended complaint and most of its counterclaims. Appx8; *see also* Appx5213–Appx5215. Supporting its motion, Rupp submitted its statement of material facts. Appx5241–Appx5250. In support of its statement of material facts, Rupp included the declaration of Ron Karpanty, the Vice President and co-owner of Rupp (Karpanty Declaration) which addressed Rupp's products based on his personal knowledge of those products, their design and features, how they are marketed, how they are sold, what design changes occurred and when, etc. and he authenticated additional documents supporting Rupp's motion. Appx5252–Appx5258.

When Rupp submitted its opposition to GEM's summary judgment motion, it addressed each of GEM's arguments and specifically disputed critical material facts submitted by GEM. *See* Appx6596–Appx6597; *see also* Appx6621–Appx6628. Rupp also submitted "additional facts" under the local rules. Appx6628–Appx6632; *see* S.D. Fla. L.R. 56.1(b)(2)(A)–(D). Following the local rules, Rupp's disputes of GEM's material facts either identified that GEM had not submitted evidence to support the specific "fact" offered, or Rupp

cited evidence that specifically contradicted the "fact" offered by GEM. Appx6628–Appx6632; *see* S.D. Fla. L.R. 56.1(b)(2)(A)–(D).

GEM's opposition to Rupp's motion, however, failed to dispute the material facts submitted by Rupp. Appx3–Appx4 (n.1) (addressing GEM's failure to dispute the facts); Appx6–Appx8 (listing the material facts necessary for the court's ruling); *see also* Appx6716–Appx6723 (GEM's responses to Rupp's statement of material facts); Appx6724–Appx6728 (GEM's "additional facts").[2] GEM's responses to Rupp's material facts primarily just argued that Rupp's statements of fact were "not supported by a citation to record material or any other support except Mr. Ron Karpanty's similarly phrased, conclusory assertion." *See* Appx6716–Appx6723. GEM's opposition brief opened with its various arguments regarding the Karpanty Declaration. Appx6003–Appx6009.

Because GEM did not cite evidence to specifically contradict the facts set out in Rupp's statement of facts, the critical facts underlying the district court's summary judgment ruling were undisputed. Appx3–Appx4 (n.1); Appx6–Appx8; *see also* S.D. Fla. L.R. 56.1(b)(1)–(2), (c).

**1. The Undisputed Factual Record.**

The district court's order addressed the undisputed material facts that resulted in summary judgment for Rupp. Appx3–Appx4 (n.1); Appx6–Appx8.

[2] GEM originally submitted its response statement as an attachment to its opposition brief, Appx6027–Appx6039, contrary to the procedure required by the local rules, *see* S.D. Fla. L.R. 56.1(b)(1). GEM re-filed its response statement as a separate document the next day, complying with the local rules.

Rupp sells two pulley clusters at issue: CA-0145, a single pulley block containing two sheaves, and CA-0146, a single pulley block containing three sheaves. Appx6 (citing Appx5252 (¶¶7–8); Appx5378–Appx5379; Appx5386–Appx5387; Appx5441–AAppx5442, Appx5444–Appx5445); *accord* Appx5244 (¶¶20–21) (Rupp's Statement of Facts); *see also* Appx6717 (¶¶20–21) ("Undisputed."). Rupp began selling the "Pulley Clusters" in 2012. Appx6 (citing Appx5253(¶9)); *accord* Appx5244(¶22). In 2015, Rupp redesigned its "Pulley Clusters" to incorporate an adjustable polyaxial ball-joint stem that allows the pulley housing to pivot relative to the structure to which it is mounted. Appx6 (citing Appx5253(¶11)); *accord* Appx5245(¶23).

As a result, when the "Pulley Cluster" is attached to an outrigger, the pulley housing, sheaves, and cord-routing openings move relative to the outrigger in response to halyard-line tension. Appx6 (citing Appx5253(¶15); Appx5481-Apx5483 ("Made using Rupp's exclusive polyaxial design that allows the pulley to self-align, further reducing halyard line wear."); Appx5440-Appx5442, Appx5444-Appx5445, Appx5452-Appx5453 (engineering files); Appx5456, Appx5461, Appx5463, Appx5467, Appx5472, Appx5476-Appx5477 (photos)); *accord* Appx5245(¶27).

Rupp also sells the "Accused Clamp Pulleys," which include a pivot connection attaching the pulley housing to the clamp via a pair of pins. Appx6 (citing Appx5253 (¶18); Appx5443; Appx5446–Appx5451); *see also* Appx5245 (¶30). When mounted on an outrigger, the clamp pulleys also move relative to

the outrigger in response to halyard line tension. Appx6 (citing Appx5254 (¶19)).

None of Rupp's accused pulley products have a housing that attaches directly to an outrigger with at least one fastener, and none contain a housing that forms the "cord passage" on the outer side of the pulley wheel or on the side opposite the outrigger as claimed in the asserted patents. Appx7 (citing Appx5254 (¶¶20, 24–25); Appx5443; Appx5446–Appx5451); *see also* Appx5246 (¶¶32, 35–36).

Rupp sells outriggers and pulley products separately. Appx7; Appx5246 (¶¶37–39). The respective design files for Rupp's outriggers and pulleys are distinct, and Rupp does not offer for sale or sell any outrigger with pre-installed pulleys. Appx7 (citing Appx5254 (¶¶26–28); Appx5259–Appx5373; Appx5377–Appx5379; Appx5383–Appx5395). When customers purchase both outriggers and pulleys, the products appear as separate line items on invoices, and customers pay separate prices for each. Appx7 (citing Appx5255 (¶29); Appx5247 (¶40). Rupp markets the accused Pulley Clusters as components that may be used "in any combination for single, double or triple rigging of halyard lines," and states that users may employ them in any way, including with a single halyard line and a single retention device. Appx7; (citing Appx5253 (¶¶14, 17); Appx5481–Appx5483); Appx5245–Appx5246 (¶¶26, 29, 34)

Rupp's outriggers are sold with eyebolts and can be used without pulleys. Appx7 (citing Appx5255 (¶30)); Appx5246 (¶38); Appx5247 (¶41). Rupp sells outriggers and accessories so that end users may configure their systems as they

choose. Appx7 (citing Appx5255 (¶31)); Appx5245–Appx5246 (¶¶26, 28–29, 33–34). The accused pulleys are not limited to outrigger use and may be used in single-line configurations or on structures other than outriggers. Appx7 (citing Appx5253 (¶¶16–17)); Appx5245 (¶¶28–29); Appx5246 (¶¶33–34). Rupp's outriggers can be used without the accused pulleys, including with eyebolts or with pulleys attached by clips or shackles. Appx7 (citing Appx5255 (¶30)).

Rupp provides no instructions or advertisements directing customers to assemble a system meeting the limitations of the '632, '226, or '566 patents, nor any materials instructing users how to perform the method of the '778 patent. Appx7 (citing Appx5255 (¶¶32–34)); Appx5247 (¶¶43–45). For products sold to distributors, boat builders, or retailers, Rupp does not interact with end users, and there is no communication between Rupp and any alleged direct infringer. Appx7–Appx8 (citing Appx5255 (¶¶35–36)); Appx5247 (¶¶47–48).

These facts were presented by Rupp in its defense to GEM's infringement claims and they were not disputed by GEM with evidence establishing a triable issue of material fact.

#### 2. GEM's Concessions in Supplemental Authority and During the Summary Judgment Hearing.

In opposing Rupp's summary judgment motion, GEM conceded that Rupp's outriggers—all of which are offered for sale and sold with eyebolts—have substantial non-infringing uses. Appx11 (n.2, citing Appx6013)

In advance of the summary judgment hearing, GEM submitted a notice of supplemental authority in opposition to Rupp's summary judgment motion.

Appx7392. GEM cited *Koninklijke Philips N.V. v. Zoll Med. Corp.* 656 Fed. Appx. 504 (Fed. Cir. 2016), amending its argument about Rupp's products. *See* Appx7392. GEM's changed contributory infringement position was not based on pulley clusters as offered for sale and sold by Rupp, i.e., with an adjustable polyaxial ball-joint stem. Now, GEM argued that the "infringing feature" was the "Pulley Clusters with no 'stem'," i.e., when a user removes the stem. *See* Appx7392; *see also* Appx2578–Appx2579 (12:25–14:2) ("maybe 50 percent" of Palm Beach Towers's customers request that Palm Beach Towers remove the polyaxial ball-joint stem before Palm Beach Towers installs the pulleys). Rupp's response highlighted that GEM's changed argument was a concession that the pulley clusters are non-infringing as offered for sale and sold by Rupp; it is only when a third-party modifies Rupp's pulley clusters that they become the potentially "infringing feature." Appx7395.

During the summary judgment hearing, GEM's counsel conceded that Rupp's pulley clusters can also be used as pulleys independent of an outrigger, i.e., in non-infringing uses. Appx7494 (34:8–25). Though acknowledging that Rupp's pulley clusters could be used apart from an outrigger, GEM's counsel tried to avoid that concession by inaccurately asserting—contrary to all evidence—that the 1/4x20 internal threads of the pulley clusters prevent those pulleys from attaching to anything other than Rupp's outriggers. Appx7494 (at 34:8–25: "THE COURT: Why couldn't you just fasten this [pulley cluster] on a sailboat mast and use it to pull up the sail? MR. LANSER: You could, but that pulley is not designed to do that. You would have to do things to that pulley to

do what you are saying right now. THE COURT: Why? What would I have to do if I just screw it on the mast the same as I screw it on the outrigger? MR. LANSER: I guess you could, you Honor, but first of all, A, the bolting would have to be the same exact size. That bolt size, that one quarter inch by 20 that they have on the stem and housing is specifically made and manufactured to match the threads on their outriggers, nothing else. You would have to go out there and doctor that to create and do what you are saying. Your honor, the point being is hypothetically – could I put that on a sailboat hypothetically? Yes, you could, but the Federal Circuit has said you don't deal in hypotheticals with substantial –").

Contrary to GEM's unsupported attorney argument, the bolt size and threading is common, as conceded by Lloyd, GEM's expert. Appx5901–Appx5902 (145:8–146:16) (the one-quarter-by-twenty bolt thread is "a fairly common bolt thread"). Indeed, the bolt is so common that Rupp does not provide those bolts to customers. *See* Appx5481–Appx5483 ("Customer supplies 1/4-20 stainless steel mounting bolt.").

On appeal, GEM does not challenge that Rupp's pulley clusters are non-infringing with the polyaxial ball-joint stem that allows the housing to articulate and move relative to the stem. Blue.Br.31 ("GEM does not challenge that these Pulley Clusters *with Loose Stems* would not cause infringement."); Blue.Br.13–14 ("GEM is not appealing whether Rupp's Pulley Clusters *with Loose Stems* infringe the Asserted Claims . . . ."); *see also* Appx5761–5763 (¶¶93–94, GEM's expert report addressing that the pulley clusters allow "minimal" articulation

and movement out the package, but that by loosening the nut adjacent to the housing, greater articulation is achieved); Appx2578 (11:8–12:8, Glonek testifying that the pulley clusters move around on the polyaxial ball-joint stem "no problem"); Appx5481–Appx5483 (Rupp's website advertising the polyaxial ball-joint stem as a feature to reduce halyard line chafing). In not appealing that aspect of the district court's order, GEM has further conceded that the pulley clusters as sold by Rupp—i.e., with an adjustable polyaxial ball-joint stem—are staple articles of commerce with substantial noninfringing uses.

### D. The District Court's Noninfringement Ruling.

#### 1. No Direct Infringement.

Though GEM's original complaint accused Rupp of direct infringement, GEM withdrew the direct infringement claims when it filed the amended complaint. Appx9. The district court addressed that indirect infringement still required evidence of direct infringement by a third party, and that GEM did not point to any end user, or third party, that directly infringed any asserted patent claim by using the products Rupp sells. Appx9. Further, the district court addressed that due to the manner that Rupp's products attach and operate, GEM could not point to any end user that directly infringes by using the products as sold by Rupp. Appx9; *see also* Appx7392 (GEM's infringement theory changed to being based on post-sale modifications to Rupp's products).

#### 2. No Contributory Infringement.

Beyond GEM's failure to establish third-party direct infringment using the products offered and sold by Rupp, the district court also explained that the

undisputed factual record showed that Rupp's products were all staple articles of commerce with substantial noninfringing uses. Appx9–Appx13. First, the record established that Rupp's pulleys are simply pulleys, "a quintessential staple [article] of commerce." Appx11. The district court addressed the myriad common applications of pulleys, Appx11, similar to the noninfringing sailboat application that GEM's counsel conceded at oral argument, *see* Appx7494 (34:8–25). Additionally, the undisputed facts established that Rupp's pulleys are marketed for use in noninfringing uses even when attached to outriggers, including with only a single halyard line and single "retention device." Appx7; *see also* Appx5097–Appx5100; Appx5102–Appx5104; Appx5481–Appx5483; Appx5484 (Rupp's website homepage image showing single-line rigging with clamp pulleys).

The district court also addressed that the pulley products offered and sold by Rupp do not meet the limitations that distinguished Mercier's inventions from the prior art. Appx11–Appx13. As noted, "[t]he way [Rupp's] pulleys move is significant," because the prosecution and reexamination of the Mercier patents highlighted that—even under GEM's theories—the only arguable difference between the Asserted Patents and the prior art was in how the pulleys connected to the outrigger and the resulting "fixed" nature of the pulley on the outrigger. Appx11–Appx13. GEM's expert identified this difference, with respect to the '632 patent, as requiring the pulley housing to be directly connected to the outrigger with at least one fastener (bolt). Appx5892–Appx5894 (107:18:115:10).

During prosecution and reexamination, Mercier highlighted the "fixed" requirement of his invention, arguing that a moveable pulley "negates" multiple limitations within the asserted claims. *See, e.g.*, Appx1271–Appx1273 (a pulley that can move in response to halyard line tension "negates any notion of defining a plurality of cord passages[] which are 'transversely offset' from one another, and each 'maintained in fixed angular orientation relative to the outrigger structure'" as required in the claims); Appx898–Appx901 ('778 prosecution interview summary addressing "attempt to overcome the cord management positions having cord passages which can move with respect to the portion of the outrigger structure to which they are mounted"); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary noting the addition of "fixed angular orientation" language because prior art "allows movement of the pulley relative to the outrigger structure that does not result in fixing the orientation of the cord passages.").

Rupp's pulleys do not attach as required by the claims, i.e., where the pulley housing is directly bolted to the outrigger. Appx12; Appx7 (undisputed facts). Rupp's pulleys do not operate in the manner required by the claims, i.e., Rupp's pulleys are designed to move. Appx12; Appx6 (undisputed facts). Rupp's pulley clusters have an adjustable polyaxial ball-joint stem to allow the pulley housing to move relative to the stem, and Rupp's clamp pulleys have a pivot connection between the pulley housing and clamp portion to permit the pulleys to move. Appx6. GEM knew this aspect of Rupp's products was fatal to its infringement claims, which is why it submitted supplemental authority

addressing that infringement can occur when a third party *modifies* the pulley cluster after Rupp sells it. *See* Appx7392; *see also* Appx7395.

### 3. No Induced Infringement.

Finally, the district court addressed that GEM did not present any evidence of active inducement. Appx13–Appx14. "[Rupp] provides no instructions, manuals, marketing material, or communications directing customers to assemble a system meeting the limitations of the asserted patents or to perform the method claimed in the '778 patent." Appx13. GEM had its opportunity to cite evidence during the summary judgment briefing and, it had a final opportunity when specifically asked by the district during the summary judgment hearing to identify its record evidence of inducement. Appx7500–7502 (40:17–42:8); Appx7517 (57:21–23, "MR. LANSER: We will get you those citations you requested as well, your Honor. We are having wifi issues right now."). GEM's submission, however, failed to identify any evidence of inducement. *Cf.* Appx7397. The facts were clear and established by the undisputed record, Rupp does not actively induce any third party to infringe. Appx13; Appx7–Appx8 (undisputed facts).

## SUMMARY OF THE ARGUMENT

This Court should affirm the judgment of non-infringement, as there was no genuine dispute as to any material fact in the proceedings before the district court. Ultimately, this is a simple and straightforward case: Rupp's accused products have substantial noninfringing uses and it does not actively induce any

third party to infringe any asserted patent. GEM did not create a genuine dispute as to those material facts; they were undisputed in the record below.

On appeal, GEM overcomplicates what it presented below and confuses the summary judgment record. After failing to dispute or establish critical facts before the district court during summary judgment, GEM now tries to argue that there were citations in *other* places that could create a dispute. First, if GEM had evidence to raise a genuine dispute of fact, it was required to identify that evidence to the district court in its response statement of material facts; it is not allowed to argue its case differently on appeal. GEM's need to go outside of the summary judgment record to try and support its arguments on appeal only serves to highlight that GEM did not present evidence to the district court.

It was GEM's burden to present evidence to the district court that could raise a genuine dispute of fact; the court was not required to hunt through the record trying to find evidence that GEM did not present to it. As this Court has often noted, "Judges are not like pigs hunting for truffles buried in briefs" or the record. *See, e.g.*, *Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1371–72 (Fed. Cir. 2023) (quoting *United States v. Dunkel*, 927 F.2d 955, 965 (7th Cir. 1991)); *Olaplex, Inc. v. L'Oreal USA, Inc.*, 855 Fed. Appx. 701, 712 (Fed. Cir. 2021) (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002)); *Pipes v. United States*, 123 F.4th 1324, 1331 (Fed. Cir. 2024) (quoting *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016)); *Keysight Technologies, Inc. v. Centripetal Networks, LLC*, No. 25-1053, 2026 WL 2097975, at *3 (Fed. Cir. Jul. 21, 2026) (quoting *Pipes*, 123 F.4th at 1331).

There is no evidence that Rupp actively induced any third party to infringe any claim of the patents-in-suit. In response to the district court, GEM could not identify a single "instruction" or other communication from Rupp instructing or inducing a third party to practice the system, or perform the method, of the patents-in-suit. *See* Appx7500–7502 (40:17–42:8, requesting GEM's record citations for inducement); *see also* Appx7397 (citations that do not show any inducement of infringement). The facts were clear and established by the undisputed record, Rupp does not actively induce any third party to infringe. Appx13; Appx7–Appx8 (undisputed facts).

There is also no genuine dispute that Rupp's products are staple articles of commerce with substantial non-infringing uses. GEM's brief attempts to overcomplicate what is a simple and straightforward case. Rupp's products have substantial non-infringing uses even under GEM's theories of infringement. Rupp's pulleys do not attach as required by the claims and, when attached to an outrigger, they move relative to the outrigger, which "negates" the specific limitations Mercier added to distinguish from moveable pulleys. *See, e.g.*, Appx5892–Appx5894 (107:18–115:10, GEM's expert testimony that the '632 patent requires a direct connection between the pulley housing and outrigger); Appx1271–Appx1273 ('632 reexamination); Appx898–Appx901 ('778 prosecution); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary).

Moreover, Rupp's pulleys are advertised for noninfringing uses, including for uses with only a single halyard line and a single "retention device." *See, e.g.*, Appx7; Appx5097–Appx5100; Appx5102–Appx5104; Appx5481–Appx5483; Appx5484 (Rupp's website homepage image showing single-line rigging with clamp pulleys). And at the summary judgment hearing, GEM's counsel conceded that Rupp's pulley clusters could be used as pulleys (which they are) independent of use on an outrigger—another noninfringing use. Appx7494 (34:8–25). Nothing "special" is required; Rupp's pulley clusters will attach to any object through a common bolt. *See* Appx5901–Appx5902 (145:8–146:16) (the one-quarter-by-twenty bolt thread that the pulley cluster attaches to is "a fairly common bolt thread"); *see also* Appx5481–Appx5483 ("Customer supplies 1/4-20 stainless steel mounting bolt.").

GEM failed to present evidence to the district court below to satisfy its burden. Now, GEM makes new arguments on appeal, but those new arguments are irrelevant. *Even if* Rupp offered or sold fixed pulleys (which it does not), i.e., pulleys without the polyaxial ball-joint stem or even with the "tight" stem, such pulleys would *still* be staple articles of commerce with substantial noninfringing uses. Those hypothetical pulleys addressed in GEM's brief could *still* be used—as conceded by GEM's counsel—independently of an outrigger. They would *still* be pulleys and would *still* be suitable for use as all pulleys are. All that would be necessary is to attach the pulley with a "common" bolt and it would operate just as any other pulley. And the district court correctly recognized that a pulley is the quintessential staple article of commerce. Appx11.

The hypothetical "subcategories" of accused products addressed in GEM's brief could *still* be attached to a sailboat mast, *see* Appx7494 (34:8–25), or any other object, with a common bolt and used exactly as pulleys are used.

It was GEM's burden to show the absence of substantial noninfringing uses; GEM failed to do so. Instead, GEM's presentation to the district court confirmed that Rupp's pulleys—and all of the Accused Products—have substantial noninfringing uses.

## STANDARD OF REVIEW

The Eleventh Circuit "review[s] a district court's grant of summary judgment *de novo* and appl[ies] the same legal standards as the district court." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 646 (11th Cir. 2007); *see also Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 676 (Fed. Cir. 2015) (this Court "review[s] summary judgment decisions according to the law of the regional circuit").

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Mirror Worlds Tech., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 868 (Fed. Cir. 2024) ("As relevant here, when, on a properly made record,

the evidence precludes a reasonable finding of a fact that plaintiff must prove to prevail on a claim of its complaint, summary judgment under Federal Rule of Civil Procedure 56(a) for the defendant on that claim is warranted, other issues regarding that claim thus being immaterial to the outcome.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

However, under the Eleventh Circuit's *de novo* review standard, a party is confined to the evidence and arguments presented to the district court; new arguments or attempts to create disputes that were not disputed below are not considered. *See, e.g.*, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330–31 (11th Cir. 2004). The Eleventh Circuit "has 'repeatedly held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by th[e] court."'" *Id.* (quoting *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991))) (collecting cases). "The reason for this prohibition is plain: as a court of appeals [appellate courts] review claims of judicial error in the trial courts. If [appellate courts] were to regularly address questions—particularly fact-bound issues—that district courts never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.* at 1331; *accord Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) ("Too often our colleagues on

the district courts complain that the appellate cases about which they read were not the cases argued before them. We cannot allow Plaintiff to argue a different case from the case she presented to the district court.").

## ARGUMENT

### I. The District Court Correctly Entered Summary Judgment of Noninfringement for Rupp.

#### A. This Court Should Not Consider the New Arguments in GEM's Brief That Were Not Presented or Briefed to the District Court in the Summary Judgment Record.

On appeal, GEM presents a new case, one that it failed to present to the district court below and, under Eleventh Circuit precedent, should not be considered on appeal. "'A federal appellate court will not, as a general rule, consider an issue that is raised for the first time on appeal.'" *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) (quoting *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1461–62 (11th Cir. 1990)). "'The corollary of this rule is that, if a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.'" *Ibid.* (quoting *Pan Am*, 905 F.2d at 1462).

Further, a party does not preserve an issue, claim, argument, or theory for appeal by raising it for the first time in a motion for reconsideration. *See, e.g.*, *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) ("A motion for reconsideration cannot be used to 'relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'

*Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). This prohibition includes new arguments that were 'previously available, but not pressed.' *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)."); *Doe v. Magical Cruise Co. Ltd.*, No. 23-12816, 2024 WL 2649037, at *5–6 (11th Cir. Aug. 5, 2024) (citing and applying same).

The Eleventh Circuit "has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Access Now*, 385 F.3d at 1331 (collecting cases) (internal quotation marks omitted). "The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions – particularly fact-bound issues – that district courts never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.*

On appeal, GEM abandons the claims it made before the district court, and presents *new* theories based on supposed "subcategories" of the "Accused Products." Blue.Br.37–41. GEM is not appealing the district court's noninfringement order with respect to Rupp's double and triple pulley cluster products with the adjustable polyaxial ball-joint stem. Blue.Br.31. Instead, GEM asserts on appeal that Rupp sells its "Accused Pulleys" without the polyaxial ball-joint stem, Blue.Br.32–36, or with stems that are "tight," Blue.Br.32,36–40.

In the case litigated below, GEM identified "Accused Products" by product number and the parties developed a record based on those "Accused Products." The undisputed evidence showed that the products offered for sale and

sold by Rupp are staple articles of commerce with substantial noninfringing uses, thereby establishing that Rupp does not contributorily infringe. Appx9–Appx13; Appx6–Appx8 (undisputed facts).

On appeal, GEM presents a different case. It does not challenge the non-infringement finding based on moveable pulleys. Blue.Br.13–14. To this Court, GEM argues that there are distinct "subcategories" of Rupp's accused pulley cluster products—the "pulley clusters without stems" and the "pulley clusters with tight stems" that do not move and, under GEM's theory, result in infringement. Blue.Br.13–14; Blue.Br.31–41. Those "subcategories" were not presented as "Accused Products" to the district court and, moreover, do not exist. The undisputed facts and all record evidence show that Rupp's pulley clusters are *all* offered for sale and sold by Rupp with an adjustable polyaxial ball-joint stem to allow those pulleys to move in response to halyard line tension and to reduce line chafing. The only pulley cluster products *actually* offered and sold by Rupp, the ones identified by GEM in the proceedings below and addressed in the summary judgment order, are not the subject of GEM's appeal. *See* Blue.Br.13–14; *see also* Appx2577–Appx2579 (8:1–14:12) (Glonek testimony that all of Rupp's pulley clusters arrive to Palm Beach Towers with "the ball swivel piece" and those products can "move . . . around no problem").

Because GEM is "not appealing" the noninfringement findings based on the Accused Products, i.e., moveable pulleys, this Court should affirm the ruling below and disregard GEM's new arguments. The district court did not address arguments that GEM did not present. The district court found facts undisputed

where GEM did not dispute them. Those are not errors with the district court's summary judgment order; GEM's arguments merely highlight that it failed to satisfy its burden of production at summary judgment, that it failed to show that there was a triable fact for its infringement case. GEM's inability to present evidence during summary judgment is not error by the district court. The district court's noninfringement ruling should be affirmed.

### B. The District Court Correctly Limited Its Summary Judgment Order to the Evidence That Was Properly Presented to It in the Summary Judgment Record.

#### 1. The District Court's Reliance on the Karpanty Declaration was Correct.

In its Opening Brief, GEM argues that the district court erred by relying on the Karpanty Declaration and "ignored" fact disputes. Blue.Br.41–49. But while GEM argues that the district court "never even acknowledged" or "brushed aside" its "substantial evidence," Blue.Br.41–42, noticeably absent from GEM's arguments is a citation showing where it *disputed* the facts below.

The district court's reliance on Karpanty's declaration was proper. The Federal Rules of Civil Procedure and Southern District of Florida Local Rule expressly authorize statements of material facts to include declarations submitted on personal knowledge. Fed. R. Civ. P. 56(c)(4); S.D. Fla. L.R. 56.1(b)(1)(B); *see also* Appx3–Appx4 (n.1). That is the normal procedure for testimony from a party, or party's principal, at summary judgment.

Now, GEM argues that the district court erred because "the district court should have considered [GEM's] Motion *in limine* ***before*** the summary

judgment motions." Blue.Br.46. GEM is wrong. GEM never separately moved to exclude the Karpanty Declaration in connection with Rupp's summary judgment motion; GEM's motion *in limine* addressed *trial* evidence. Appx7354 ("Based on these principles, GEM moves in limine to preclude reference at trial to the following discrete issues:"); *see also* Appx7365–Appx7367.

Instead, GEM presented its dispute about the Karpanty Declaration in its opposition brief, which was reviewed, and rejected, by the district court. Appx3–Appx4 (n.1); *see also* Appx6003–Appx6009 (GEM's MSJ opposition raising its disputes as to the Karpanty Declaration). GEM argued (1) that it was improper to support summary judgment with a declaration, Appx6003–Appx6004, (2) that the declaration was "conclusory and self-serving," Appx6004–Appx6006, and (3) that it was improper expert opinion, Appx6006–Appx6009. The district court considered those arguments and properly rejected them. Appx3–Appx4 (n.1). No separate ruling on GEM's motion *in limine* was required.

In addressing the undisputed facts, the district court relied on statements of fact offered by Karpanty in the declaration, many of which were supported by citations to materials that GEM could not dispute. Appx3–Appx4 (n.1) (addressing exhibits addressed in the declaration); Appx6–Appx8 (listing undisputed facts taken from the Karpanty Declaration and supporting materials). The district court repeatedly noted that much of record evidence supporting these undisputed facts came from materials produced *by GEM* during discovery and corroborated by Karpanty as accurate. Appx3–Appx4 (n.1).

GEM presented its dispute regarding the Karpanty Declaration in its summary judgment brief. Appx6003–Appx6009. The district court correctly rejected GEM's arguments, noting that declarations are expressly contemplated as summary judgment evidence and that Karpanty's factual assertions were also supported by documentation that GEM could not dispute. Appx3–Appx4 (n.1); *see also* Appx7315 (n.1). GEM's arguments on appeal are without merit.

#### 2. The District Court Correctly Identified That GEM Failed to Dispute the Critical Facts.

The district court correctly identified that GEM did not dispute Rupp's material facts, Appx3–Appx4 (n.1); it did not "ignore" or "brush aside" any factual disputes. The Southern District of Florida Local Rules set out a well-organized procedure for summary judgment practice. S.D. Fla. L.R. 56.1. Rather than include statements of material facts within the memorandum of law, all statements of fact must be submitted in a separate document, not to exceed ten (10) pages, with separately numbered paragraphs, limited as far as practicable, to a single material fact. *Id.* 56.1(b)(1)(A)–(B). Each fact must be supported by "specific, pinpoint references to particular parts of record material, including deposition, documents, [ESI], affidavits, stipulations . . . admissions, and interrogatory answers." *Id.* 56.1(b)(1)(B).

When opposing a summary judgment motion, the response statement of material fact must comply with those same requirements, corresponding to the same paragraph numbers as the movant's statement. *Id.* 56.1(b)(2)(A). If disputing a material fact, the opposer's statement must start with the word

"disputed," *id.* 56.1(b)(2)(B), and "then the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute," *id.* 56.1(b)(2)(C). The failure to present evidence disputing a material fact is deemed an admission of that fact. *Id.* 56.1(c).

GEM failed to dispute the material facts, as correctly addressed in the district court's order. Appx3–Appx4 (n.1). In filing its opposition, GEM submitted a response statement of material facts. Appx6716–Appx6723. Rather than cite evidence to dispute Rupp's statement of material facts, GEM *argued* that Rupp's facts were only supported by the Karpanty Declaration. Appx6716–Appx6723. Even through Karpanty's declaration addressed facts based on personal knowledge, he also attached additional evidence in support of many of those facts. Appx5252–Appx5258; *see also* Appx5242–Appx5250. Because GEM did not cite evidence to specifically contradict the facts established by Rupp's motion, the critical facts underlying the district court's summary judgment ruling were undisputed. Appx3–Appx4 (n.1); Appx6–Appx8; *see also* S.D. Fla. L.R. 56.1(b)(1)–(2), (c).

The district court also addressed, and rejected, GEM's arguments that the Karpanty Declaration should not be considered. Appx3–Appx4 (n.1); *see also* Appx6003–Appx6009 (GEM's arguments below). Because GEM did not cite evidence to contradict the material facts established by Rupp's motion, the critical facts underlying the district court's summary judgment ruling were undisputed. Appx3–Appx4 (n.1); Appx6–Appx8 (listing undisputed facts); *see also* S.D. Fla. L.R. 56.1(b)(1)–(2), (c).

The district court correctly identified the undisputed material facts underlying Rupp's motion for summary judgment. Appx3–Appx4 (n.1); Appx6–Appx8. Those undisputed facts established Rupp's noninfringement. Appx8–Appx14.

On appeal, GEM does not rely on its *opposition* to Rupp's summary judgment motion or its *response* statement of material facts. As addressed above, GEM's response statement of material facts was empty; GEM did not present *evidence* to dispute facts or otherwise show the existence of a genuine dispute of material facts. *See* Appx3–Appx4 (n.1). Therefore, throughout GEM's opening brief, it constantly conflates the summary judgment record of its own motion with the record for Rupp's motion. *See, e.g.*, Blue.Br.58–61 (arguing the district court "ignored" evidence while citing its own affirmative motion, rather than its opposition).

This defect in GEM's presentation was also highlighted in GEMs motion for reconsideration. Appx7420–Appx7421. Tellingly, to find evidence "disputing" material facts GEM could not cite its response statement of material facts; instead, it cited its statement of additional facts, or documents attached to its affirmative summary judgment motion. Appx7420–Appx7421. Where GEM was *required* to dispute Rupp's material facts and cite specific evidence showing a dispute, GEM has nothing. *See* Appx6717–6723. GEM's arguments simply highlight that it failed to present evidence to the district court in the proceedings below.

### 3. The District Court Correctly Addressed Only the "Accused Products" That GEM Put at Issue in the Pleadings and Summary Judgment Record.

The "Accused Products" were established by the amended complaint, Appx361–Appx362, and confirmed in GEM's infringement contentions, Appx7214–Appx7216. Rupp was accused of infringement for selling its double pulley cluster (product CA-0145), its triple pulley cluster (product CA-0146) and its different sets of clamp pulleys (products CA-03PC-3X, CA-03PC-2X, CA-04PC-3X, CA-04PC-2X) (collectively the "Accused Pulleys"). Appx361; Appx7215; *see also* Appx5440–Appx5453 (engineering files for "Accused Pulleys"). GEM also identified as "Accused Products" various outrigger models that Rupp offers for sale and sells with eyebolts. Appx362; Appx7215–Appx7216; *see also* Appx5259–Appx5373 (engineering files for outriggers). GEM conceded, however, that the outriggers are non-infringing. *See, e.g.*, Appx6013 ("GEM is not asserting that Rupp's outriggers *without pulleys* cause Rupp's infringement. So, whether Rupp's outriggers without pulleys have other uses is entirely irrelevant to the contributory infringement assessment – they do not infringe to begin with."); Appx10 n.2 (quoting same).

On appeal, GEM is "not appealing" the noninfringement ruling with respect to *those* accused products; rather, GEM argues that the district court did not consider "subcategories" of those accused products. Blue.Br.13–14; Blue.Br.31–41. But GEM's pleadings, infringement contentions, and arguments did not raise a dispute over "subcategories" of accused products, and GEM did not cite evidence to establish a triable issue of fact as to the *existence* of such

"subcategories." *See, e.g.*, Appx361–Appx362 (Amended Complaint ¶33); Appx7214–Appx7216 (contentions); Appx6009–Appx6016 (opposition arguments).

Indeed, in briefing before the district court, GEM accepted (as it must) that the polyaxial ball-joint stem is a part of the pulley cluster products offered and sold by Rupp. Appx6009–Appx6014. GEM did not present evidence to the district court that there were subcategories of accused pulleys, and it did not dispute the fact that Rupp's pulley clusters come with an adjustable polyaxial ball-joint stem. *Compare* Appx5244–Appx5245 (¶¶1925) *with* Appx6717 (¶¶19–25). GEM even conceded in its interrogatory responses that Rupp's pulley clusters come with that stem. *See, e.g.*, Appx5664–Appx5666 (amended response to interrogatory 8); Appx2577–Appx2579 (8:1–14:12) and Appx2580 (20:12–21:25) (Glonek testimony about his pre-suit conversation with Bridgewater where he explained that all of Rupp's pulley clusters come with the polyaxial ball-joint stem and explained how it worked to allow the pulley to articulate and move side-to-side and up-and-down). GEM has no record evidence that Rupp offers or sells its products any other way.

### C. The District Court Correctly Concluded That GEM Failed to Present Evidence of Direct Infringement of Any Patent Claim by a User of Rupp's Accused Products.

The district court's order noted that GEM failed to present evidence of direct infringement of a third party using Rupp's "Accused Products." Appx9. On appeal, GEM still does not cite evidence of third-party direct infringement using Rupp's unmodified products. GEM argues that circumstantial evidence is

sufficient, and cites its technical expert's *opinions* about how Rupp's products might be used. Blue.Br.47–48. While direct infringement can be proven by circumstantial evidence, "'[c]ircumstantial evidence must show that at least one person directly infringed an asserted claim during the relevant time period,'" *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009)), and GEM did not identify such a direct infringer to the district court below.

Even on appeal, GEM does not identify that direct infringer. It merely cites conclusory expert opinion about how he believes the products will be used. Blue.Br.48. But conclusory statements by an expert are insufficient. *See Zoll*, 656 Fed. Appx. at 513–14 (collecting cases). GEM also points to a freelance fisherman, Jose Cortes, who testified only about using pulleys on outriggers. Blue.Br.48. GEM did not cite this evidence below and so Cortes's complete deposition is not in the record. However, Cortes did not purchase the products he used and does not know if they are Rupp's products; he used pulleys that did not have a "stem"; if they are Rupp's post-2015 pulleys, Cortes does not know who modified those products, and if they are Rupp's pre-2015 stemless pulleys, then those are products that were not at issue.

Regardless, GEM did not cite evidence in the proceedings below to show that there was a direct infringer. GEM's citations to material outside of the summary judgment record only confirms that it failed to present necessary evidence at the required time. Rather than highlight error, GEM's arguments confirm that the district court correctly found that GEM failed to establish direct

infringement. Without evidence of direct infringement, this Court should affirm the ruling of no *indirect* infringement by Rupp. *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that there can be no induced or contributory infringement without an underlying act of direct infringement.") (cleaned up).

### D. The District Court Correctly Concluded That Rupp Does Not Contributorily Infringe Any Asserted Patent Claim.

The district court correctly held that Rupp does not contributorily infringe under §271(c). Appx8–Appx13. Beyond failing to identify the required direct infringement, *supra* §I(C), each of Rupp's "Accused Products" is a staple article of commerce with substantial noninfringing uses. Appx9–Appx13.

A product is capable of "substantial non-infringing use," and therefore cannot result in contributory infringement, when that use is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). As this Court addressed in *Vita-Mix*, a product has "substantial" non-infringing uses even where such uses might be rare. *Id.* at 1327-28 and n.1 (holding that the products were noninfringing as a matter of law because there were other ways to use them). This was further addressed in *Bill of Lading*, which explained that even if an "infringing use" is the "most logical or useful purpose" of that product, that does not overcome non-infringing uses of the accused product. 681 F.3d at 1338 ("That practicing the patented method may be the most logical or useful purpose for Appellees' products does not render the alternative uses

‘unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.’”) (quoting *Vita-Mix*, 581 F.3d at 1327-29).

The undisputed facts established that Rupp’s pulleys are staple articles of commerce with substantial noninfringing uses. First, GEM conceded that Rupp’s outriggers—which are offered and sold with eyebolts—have substantial noninfringing uses. Appx11 (n.2, quoting Appx6013). Next, GEM conceded at oral argument that Rupp’s pulley clusters have uses beyond being used on an outrigger. Appx7494 (34:8–25). Although GEM’s counsel tried to argue, without evidence, that the there was something “special” about the 1/4x20 bolt that threads into the pulley clusters, making them only suitable for attachment to Rupp’s outriggers, Appx7494 (34:8–25), GEM’s expert admitted that it is a common bolt size and thread, Appx5901–Appx5902 (145:8–146:16) (it is “a fairly common bolt thread”). That bolt is so common that Rupp does not provide it for its customers. *See* Appx5481–Appx5483 (“Customer supplies 1/4-20 stainless steel mounting bolt.”).

Additionally, the undisputed facts established that Rupp’s accused pulleys are marketed for use in noninfringing ways even when they are attached to outriggers, including with only a single halyard line and single “retention device.” Appx7; *see also* Appx5097–Appx5100; Appx5102–Appx5104; Appx5481–Appx5483; Appx5484 (Rupp’s website homepage image showing single-line rigging with clamp pulleys). It was GEM’s burden to show there was evidence of a lack of substantial noninfringing uses. *Toshiba*, 681 F.3d at 1363 (“Because Toshiba had the burden to prove the lack of substantial non-infringing uses,

Toshiba was required to put forth evidence showing that the use of unfinalized DVDs was not substantial.") (citing *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2016)). As in *Toshiba*, GEM failed to put forward evidence showing that the advertised noninfringing uses were unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. *Id.* (citing *Vita-Mix*, 581 F.3d at 1327).

Further, the district court also addressed that Rupp's pulley products—as offered and sold by Rupp—do not meet the specific claim limitations that were required by the USPTO to distinguish the asserted patents from the prior art. Appx11–Appx13. "The way [Rupp's] pulleys move is significant," because the prosecution and reexamination of the Mercier patents highlighted that—even under GEM's theories—the ability of the pulleys to move relative to an outrigger "negates" critical limitations and the resulting "fixed" nature required in the claims. *See* Appx11–Appx13. GEM's expert identified that the '632 patent claims require the pulley housing to be directly connected to the outrigger with at least one fastener (bolt). Appx5892–Appx5894 (107:18:115:10).

Mercier argued the "fixed" requirement of his invention during prosecution and reexamination to distinguish from pulleys that could move. *See, e.g.*, Appx1271–Appx1273 (a pulley that can move in response to halyard line tension "negates any notion of defining a plurality of cord passages[] which are 'transversely offset' from one another, and each 'maintained in fixed angular orientation relative to the outrigger structure'" as required in the claims); *see also* Appx898–Appx901 ('778 prosecution: "Applicant and Examiner discussed

the amendment filed on 02/08/2016 wherein claim 1 has been amended to recite that 'a plurality of transversely offset cord passages respectively guiding predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof at fixed angular orientations relative to the outrigger structure' in an attempt to overcome the cord management positions having cord passages which can move with respect to the portion of the outrigger structure to which they are mounted of Malin Big Boat Rigging Kit dated 11/4/2002. Examiner stated that under tension during trolling that the cord passages at each of the cord management positions maintains the outrigger cords at fixed angular orientations relative to the outrigger structure. Examiner stated that possibly amending the language further to more particularly claim the structure of the clamp member 308 and housing 306 of the present invention which serve to immovably attach the cord passages 304 of the present invention to the portion of the outrigger structure 10 would serve to overcome the Malin Big Boat Rigging Kit . . . ."); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary noting the addition of "fixed angular orientation" language because prior art "allows movement of the pulley relative to the outrigger structure that does not result in fixing the orientation of the cord passages.").

The undisputed facts established that Rupp's pulleys do not attach as required by the claims, i.e., where the pulley housing is directly bolted to the outrigger. Appx12; Appx7 (undisputed facts). Rupp's pulleys do not operate in the manner required by the claims, i.e., Rupp's pulleys are designed to move.

Appx12; Appx6 (undisputed facts). Rupp's pulley clusters have an adjustable polyaxial ball-joint stem that allows the pulley housings to move relative to the stem (and outrigger, if attached to one), and Rupp's clamp pulleys have a pivot connection between the pulley housing and clamp portion to permit the pulleys to move. Appx6.

GEM knew that the movement of Rupp's pulleys was fatal to its infringement claims, which is why it submitted supplemental authority addressing that infringement can occur when a third party *modifies* the pulley cluster after Rupp sells it. *See* Appx7392; *see also* Appx7395. While GEM correctly states that "the substantial noninfringing uses analysis must focus on 'the material ***actually sold by the accused*** and the uses made of it by its purchasers," Blue.Br.55 (quoting *Hodosh v. Block Drug Co.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987)) (emphasis added in Blue.Br.), its arguments then disregard the products "actually sold" by Rupp in favor of its own unsupported attorney argument, *see* Blue.Br.31–41 (arguing about "subcategories" of accused products without evidence of their sale).

This was a simple case for the district court. The undisputed record established that Rupp does not sell outriggers with pulleys on them, and GEM conceded that Rupp's outriggers without pulleys had substantial noninfringing uses; that eliminated all "Accused Outriggers with Pulleys" because those are not products offered and "actually sold" by Rupp. GEM conceded that Rupp's pulley clusters can be used as pulleys independent of outriggers; therefore, the pulley clusters have substantial non-infringing uses. GEM did not dispute that Rupp's marketing materials show that its pulleys are offered and sold for uses

including with only a single halyard line and single "retention device," indeed, Rupp's website includes an image of exactly that use, *see* Appx5484; *see also* Appx5481–Appx5483.

Finally, GEM does not appeal the ruling that Rupp's moveable pulleys have substantial non-infringing uses. Blue.Br.13–14. As addressed in the Court's order, the ability of Rupp's pulleys to move distinguishes them from the specific requirements of the asserted claims—requirements established by GEM's expert and Mercier during prosecution. *See, e.g.*, Appx5892–Appx5894 (107:18:115:10) (GEM's expert); Appx1271–Appx1273 ('632 reexamination, pulleys that can move "negates" claim limitations); Appx898–Appx901 ('778 prosecution); Appx871–Appx878 ('778 patent notice of allowability with Examiner's amendment and interview summary noting the addition of "fixed angular orientation" language because prior art "allows movement of the pulley relative to the outrigger structure that does not result in fixing the orientation of the cord passages.").

There are no "Accused Products" left after GEM's concessions, the undisputed facts, and GEM's implicit concession by not appealing the noninfringement ruling about moveable pulleys. The district court correctly held that Rupp's products are staple articles of commerce with substantial noninfringing uses—as confirmed to the district court *by GEM*.

### E. Claim Construction Was Unnecessary Below, and GEM Has Not Identified How a Claim Construction Order in Its Favor Would Have Affected the District Court's Ruling.

Finally, GEM argues that district court's noninfringement findings were "wrong," alluding to reversible error "regarding claim construction and disclaimer." *See* Blue.Br.16–17, 23–31. But other than expressing its disagreement and its blanket position that the court "must" construe the claim limtiations, it does not identify how there would have been a genuine dispute of material fact even if the court had interpreted the claims as GEM would prefer. *See* Blue.Br.23–31.

This court has rejected that type of argument. *See Blue Gentian, LLC v. Tristar Products, Inc.*, 70 F.4th 1351, 1358–59 (Fed. Cir. 2023) ("Blue Gentian's insistence that claim construction was a prerequisite to an inventorship hearing, without more, did not present a dispute about claim scope. And since Blue Gentian did not otherwise present a material dispute about claim meaning, the district court did not err by making its inventorship determination without engaging in claim construction."). In *Blue Gentian*, this Court explained that claim construction is only required where necessary, "[i]n other words, the court is not required to prospectively address hypothetical claim-construction disputes." *Id.* at 1359. "That is as true for inventorship analyses as it is for invalidity and infringement analyses." *Id.* (citing *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) (affirming ineligibility under §101 without conducting claim construction)).

Here, the undisputed facts establish that Rupp's pulleys—as offered and sold by Rupp—are moveable and their housings do not directly fasten (bolt) to an outrigger, when used with an outrigger. Mercier argued to the USPTO that the claims required a "fixed" attachment because a moveable pulley "negates any notion of defining a plurality of [']cord passages' which are 'transversely offset' from one another, and each 'maintained in fixed angular orientation relative to the outrigger structure," as recited in the asserted claims. Appx1272–Appx1273; *see also* Appx898–Appx901 ('778 prosecution: "Applicant and Examiner discussed the amendment filed on 02/08/2016 wherein claim 1 has been amended to recite that 'a plurality of transversely offset cord passages respectively guiding predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof at fixed angular orientations relative to the outrigger structure' in an attempt to overcome the cord management positions having cord passages which can move with respect to the portion of the outrigger structure to which they are mounted of Malin Big Boat Rigging Kit dated 11/4/2002. Examiner stated that under tension during trolling that the cord passages at each of the cord management positions maintains the outrigger cords at fixed angular orientations relative to the outrigger structure. Examiner stated that possibly amending the language further to more particularly claim the structure of the clamp member 308 and housing 306 of the present invention which serve to immovably attach the cord passages 304 of the present invention to the portion of the outrigger structure 10 would serve to overcome the Malin Big Boat Rigging Kit . . . .").

Even GEM's expert confirmed that the direct bolting and "fixed" attachment were claim requirements that distinguished the asserted patents from the prior art. *See* Appx5892–Appx5894 (107:18–115:10). Going into the summary judgment hearing, GEM argued that the "infringing feature" was that Rupp's pulley clusters could be *modified* by removing the polyaxial ball-joint stem, and that *modified* product was the basis for contributory infringement. Appx7392; *see also* Appx7395.

Despite arguing about claim construction, even on appeal GEM does not genuinely dispute that the direct, fixed connection is a requirement of the claims; it "does not challenge" noninfringement based on moveable pulleys. *See* Blue.Br.13–14, 31–32. GEM's appeal is an argument about non-moveable pulleys and its argument that the district court erred in failing to address those non-moveable pulleys—an argument about "subcategories" of the Accused Products that GEM did not develop below. But even *if* Rupp offered and sold non-moveable pulleys, the undisputed facts establish that those products *would also be* staple articles of commerce with substantial noninfringing uses, including uses apart from outrigger and uses on outriggers with only a single halyard line and single "retention device." Appx6–Appx8; Appx9–Appx13.

Finally claim construction was also unnecessary because so long as Rupp's interpretations of the claims and prosecution history is reasonable, there cannot be indirect infringement. *See Zoll*, 656 Fed. Appx. at 523 (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 572 U.S. 632, 642 (2015)). "The Supreme Court has explained that if an accused infringer 'reads the patent's claims differently

from the plaintiff,' and if 'that reading is reasonable,' then the accused infringer should not be liable for indirect infringement." *Id.* (quoting *Commil*, 572 U.S. at 642). Accordingly, if Rupp's understanding of the patents was reasonable, and under that understanding there were substantial noninfringing uses for the products it sold, there cannot be liability. *See, e.g.*, *Id.*; *Commil*, 572 U.S. at 642 ("*Global-Tech* requires more. It requires proof that the defendant knew that the acts were infringing.") (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768–70 (2011)).

### F. The District Court Correctly Concluded That Rupp Does Not Induce Infringement of Any Asserted Patent Claim.

The district court correctly found that Rupp does not induce infringement of any patent claim. Appx13–Appx14. The undisputed facts show that Rupp has no instructions, directions, marketing materials showing how to create an infringing system or practice an infringing method. Appx7–Appx8, Appx13; *see also* Appx5247 (¶¶42–48). GEM did not dispute these facts. Appx6719–Appx6720 (¶¶42–48); *see also* S.D. Fla. L.R. 56.1(b)(1)–(2). Instead, GEM merely complained Rupp introduced evidence through Karpanty's declaration. Appx6719–Appx6720 (¶¶42–48). If an instruction existed, GEM would have cited it. Instead, the only evidence of Rupp showing outrigger rigging is the instruction sheet showing how to rig outriggers that have eyebolts, Appx5095, and rigging diagrams that do not show pulleys and which show multiple non-infringing rigging set-ups that lack the required plurality of halyard lines or the

required plurality of retention devices, Appx5097–Appx5100, Appx5013–Appx5014.

In what can only be considered a last-ditch or "throw away" argument, GEM's brief concludes by arguing that the district court's finding of no induced infringement was legally wrong. Blue.Br.69–71. Though GEM parrots this Court's precedents for induced infringement, GEM cannot cite *evidence* to support its induced infringement claims or to show a triable factual dispute existed below. *See id.* Trying to bootstrap to its earlier arguments, *see* Blue.Br.70, GEM *asserts* that it "presented evidence in the form of Rupp's instructions, manuals, marketing materials and communications," *id.*, yet the only support for this "evidence" is a citation to its expert's opinion, *id.* (citing Blue.Br.61).

The summary judgment record confirms that GEM failed to present evidence of induced infringement. During the summary judgment hearing, the district court requested GEM's counsel to identify, in the record, where it could find the alleged acts of inducement. Appx7500–Appx7502. Unable to provide the citations in the moment, Appx7501–Appx7502, or even by the end of the hearing, Appx7517, GEM submitted its best evidence of inducement in a notice filed the following day, Appx7397. Looking at those citations, it shows rigging instructions for using outriggers *with eyebolts*, Appx7397 (citing Appx5094–Appx5095), rigging diagrams that do not show use of pulleys, and also showing how to rig outriggers with only a single halyard line, Appx7397 (citing Appx5096–5105). Lacking any *evidence*, GEM also cited its expert's *opinion*,

its own opposition brief *arguments*, and a composite of pictures and social media posts that lack any instruction or inducement. Appx7397.

The district court reviewed GEM's best citations and correctly concluded that "[Rupp] provides no instructions, marketing materials, or communications directing customers to assemble a system meeting the limitations of the asserted patents or to perform the method claimed in the '778 patent." Appx13. "For products sold through distributors or retailers, [Rupp] has no interaction with end users at all." Appx13; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) (inducement requires successful communication between the alleged infringer and the third-party direct infringer that induces the direct infringement). As the district court correctly addressed, "[t]he record contains no evidence of any affirmative act – let alone specific intent – encouraging infringement." Appx13–Appx14 (citing *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020)).

GEM's best record cites confirmed to the district court that it lacked evidence for induced infringement. There are no instructions or diagrams teaching or showing how to rig an outrigger with pulleys, much less instructions or diagrams for rigging an outrigger with pulleys, multiple halyard lines, and a "retention device" on each line. Without such evidence, GEM cannot establish a claim for induced infringement. *See, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1117–18 (Fed. Cir. 2022) (induced infringement requires demonstrating "the defendant took certain affirmative acts to bring about the commission by others of acts of infringement and had

knowledge that the induced acts constitute patent infringement.") (quotation marks omitted); *A/S v. Lupin Ltd.*, 87 F.4th 1361, 1370 (Fed. Cir. 2023) ("Examples of active steps include advertising an infringing use or instructing how to engage in an infringing use").

GEM's deficiencies with respect to induced infringment are even more pronounced in light of the Supreme Court's recent decision in *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. _, 146 S. Ct. 1391 (2026). In *Hikma*, the Court held that "'inducement must involve the taking of affirmative,' as opposed to passive, 'steps to bring about the desired result' of patent infringement." *Id.* at 1400 (quoting *Global-Tech*, 563 U.S. at 760). The Court also rejected the argument that inducement could be established by merely a "plausible chain of events through which statements" could be interpreted as inducing infringement. *Id.* "[I]nducement cannot be based only on 'vague' language 'combined with speculation about how [others] may act.'" *Id.* at 1404 (quoting *Takeda Pharmaceuticals U.S.A., Inc. v. West-Ward Pharmaceutical Corp.*, 785 F.3d 625, 632 (Fed. Cir. 2015)). And while implicit inducement is acceptable, as opposed to express inducement, "implicit or express, the necessary inducement must be 'clear' to the relevant audience and 'affirmative.'" *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005)); *see also id.* (StreamCast implicitly encouraged infringement through the "suggestive[e]" name of its Napster-like "OpenNap program").

The district court correctly applied the law to the undisputed summary judgment record and correctly concluded that Rupp does not induce

infringement. GEM failed to submit evidence to satisfy its burden and, even now, cannot cite evidence of Rupp inducing infringement of any patent claim. GEM's arguments to the contrary, conclusory and unsupported as they are, do not identify error. This Court should affirm the district court's judgment for Rupp on GEM's induced infringement claims.

* * *

This was a simple and straightforward case. *Even if* Rupp's products could be modified by users and then used to create an infringing system, *see* Appx7392; Appx7395, all of Rupp's products are staple articles of commerce with substantial noninfringing uses regardless of any claim construction disputes. GEM was obligated to produce evidence in the summary judgment record showing that there was a triable issue of material fact. GEM failed to do so. That glaring defect in GEM's case is even more pronounced when looking at GEM's response statement of material facts; GEM only made attorney argument challenging Rupp's declaration, but it did not cite evidence to create a dispute of material fact.

Thus, on appeal, GEM tries to argue that there were "secret" "Accused Products," subcategories of the products that it did not address below, subcategories that GEM argues are also sold by Rupp. But again, GEM does not present *evidence* to support the existence of these Accused Product subcategories, only attorney argument and haphazard citations to material it did not coherently present below. And while GEM's brief repeatedly asserts that the district court did

not consider its "substantial evidence," it does not cite evidence that it presented below to create a genuine dispute of material fact.

GEM also conflates evidence citations between the competing, separate summary judgment briefs, suggesting a belief that the district court was required to hunt and find evidence to support GEM's arguments. GEM did not present the necessary evidence to meet its burden, and no amount of attorney argument can overcome its failure to cite evidence to the district court to create a genuine dispute of material fact.[3] That is not error by the district court, that is merely GEM's error in failing to clearly articulate its case and its failure to cite evidence to create a genuine dispute of material fact.

**CONCLUSION**

This Court should affirm the district court's final judgment and summary judgment of non-infringement in favor of Rupp.

[3] As John Adams famously stated in closing arguments: "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." – J. Adams, Argument in Defense of the British Soldiers in the Boston Massacre Trials (Dec. 4, 1770); 1 W. Gordon, The History of the Rise, Progress, and Establishment, of the Independence of the United States of America, at 296 (1788) (https://archive.org/details/bim_eighteenth-century_the-history-of-the-rise-_gordon-william_1788_1/mode/2up, last visited August 24, 2026); *see also, e.g.*, *Equal Ground Educ. Fund, Inc. v. Sec'y, Fla. Dep't of State*, 434 So.3d 657, 657 (Fla. 2026) (Tanenbaum, J., concurring) (quoting same); *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1185 n.18 (S.D. Fla. 2012) (quoting same).

Date: August 24, 2026

Respectfully submitted,

*<u>/s/ Andrew D. Lockton</u>*

Andrew D. Lockton
Edward F. McHale
McHale & Slavin, P.A.
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
561-625-6575
alockton@mchaleslavin.com
emchale@mchaleslavin.com

*Counsel for Defendant-Appellee Rupp Marine, Inc.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1), because this brief contains 13,357 words, as counted by Microsoft Word, excluding the parts of this brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman font.

August 24, 2026 *<u>/s/ Andrew D. Lockton</u>*
Andrew D. Lockton

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing Appellee's Opening Brief with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF filing system, which would ordinarily send notice to all counsel of record and constitutes electronic service pursuant to Fed. Cir. R. 25(e).

August 24, 2026 *<u>/s/ Andrew D. Lockton</u>*
Andrew D. Lockton