No. 2026-1817

# United States Court of Appeals
# For the Federal Circuit

**GEM PRODUCTS, LLC**,
*Plaintiff-Appellant*,

v.

**RUPP MARINE, INC.**,
*Defendant-Appellee*.

Appeal from
The United States District Court for the Southern District of Florida,
Case No. 2:25-cv-14047-DMM,
Hon. Donald M. Middlebrooks

## REPLY BRIEF FOR PLAINTIFF-APPELLANT GEM PRODUCTS, LLC


Joseph R. Lanser
*Principal Counsel*
Jaimin H. Shah
TAFT STETTINIUS & HOLLISTER, LLP
111 East Wacker Dr., Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
jlanser@taftlaw.com

Charles D. Pfister
TAFT STETTINIUS & HOLLISTER, LLP
40 N. Main St., Suite 1700
Dayton, OH 45423
Telephone: (937) 641-2071

Alex M. Mathews
TAFT STETTINIUS & HOLLISTER, LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500

*Counsel for Plaintiff-Appellant GEM Products, LLC*

## TABLE OF CONTENTS

I. Argument ........................................................................................... 1

A. The District Court's Claim Construction was Legally Wrong ........................ 1

B. The District Court's Substantial Noninfringing Use Analysis was Legally Wrong ........................................................................................... 9

i. Rigging Diagrams ........................................................................................... 10

ii. Marketing Materials ........................................................................................... 12

iii. Hypothetical Uses ........................................................................................... 13

iv. Pulley Cluster Movement and Stems ........................................................ 14

C. The District Court's No Inducement Findings were Legally Wrong ............ 17

D. The District Court Ignored GEM's Evidence ............................................... 20

E. Rupp Created the Subcategories of the Accused Product it Now Calls "New" ........................................................................................... 23

F. The District Court Never Addressed GEM's Objections to the Karpanty Declaration Admissibility ........................................................................ 27

G. The Record Contains Ample Evidence of Direct Infringement .................... 28

II. CONCLUSION ........................................................................................... 32

## TABLE OF AUTHORITIES

**Cases**


*AFG Indus. v. Cardinal IG Co.*, 239 F.3d 123 (Fed. Cir. 2001) ...............................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................30

*Arendi S.A.R.L. v. Google, LLC*, 882 F.3d 1132 (Fed. Cir. 2018)............................2

*AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (2010)...........................................17

*Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320 (Fed. Cir. 2021)...................... 12, 13, 16

*Blue Gentian, LLC v. Tristar Products, Inc.,*
70 F.4th 1351 (Fed. Cir. 2023) ...................................................................7, 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................26

*Commil USA LLC v. Cisco Systems, Inc.,* 575 U.S. 632 (2015)..............................15

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
845 F.3d 1357 (2017) .........................................................................19

*Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371 (Fed. Cir. 2009) ................30

*Genuine Enabling Tech. LLC v. Nintendo Co.*,
29 F.4th 1365 (Fed. Cir. 2022) .......................................................................4

*GlaxoSmithKline LLC v. Teva Pharms. U.S.A., Inc.*,
7 4th 1320 (Fed. Cir. 2021) .......................................................................17

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) .......................................................................21

*Hikma Pharmaceuticals U.S.A. Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026).......................................................................... 19, 20

*In re Pan Am. World Airways, Inc., Maternity Leave Pracs. &*
*Flight Attendant Weight Program Litig.*,
905 F.2d 1457 (11th Cir. 1990) .......................................................................25

*Ingevity Corp. v. BASF Corp.*, 166 F.4th 1324 (Fed. Cir. 2026).................. 9, 12, 14

*Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999) ....................................... 28

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ............................ 18, 20

*Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003) ......................................... 22

*NeuroGrafix v. Brainlab, Inc.*, 787 F. App'x 710 (Fed. Cir. 2019) ...................... 31

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
701 F.3d 698 (Fed. Cir. 2012) ....................................................................... 7, 28

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................ 5

*Ricoh Co., Ltd. v. Quanta Comput. Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) ........................................................................ 20

*Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (2017) ........................ 17

*Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012) .................. 28, 29

*Vita-Mix Corp. v. Basic Holding Inc.*,
581 F.3d 1317 (Fed. Cir. 2009) ................................................................. passim

**Statutes**

35 U.S.C. § 271(b) ........................................................................................... 20

35 U.S.C. § 271(c) ............................................................................... 9, 15, 16

**Rules**

Federal Rule of Civil Procedure 56 ...................................................... 20, 27, 28

S.D. Fla. L.R. 56.1 ..................................................................................... 21, 22

# I. ARGUMENT

The district court's error was not that it simply used imprecise terminology about "movement." Instead, it indiscriminately granted summary judgment of noninfringement across materially different claims and product configurations by replacing the actual claim language with a categorical rule that none of Rupp's Pulley Clusters cause infringement if any component can move. Neither the claims nor the intrinsic record support that rule. Rupp's generic and hypothetical examples of alternative Pulley Cluster use likewise fail to establish substantial noninfringing use. And the record contains competing evidence of the configurations of the actual Pulley Clusters Rupp sells and end-users rig and use. Any of those disputes required denial of summary judgment.

## A. The District Court's Claim Construction was Legally Wrong

Rupp does not dispute the claims of the '632 Patent are materially different to the claims of the other asserted '778, '226 and '566 Patents. The'632 Patent claims a system requiring "*a housing* secured by at least one fastener against displacement relative to the outrigger structure." Appx68 (emphasis added). The '778 Patent claims methods, and the '226 and '566 Patents respectively claim systems and apparatus, but none include the "housing secured by at least one fastener" limitation from the '632 Patent. Instead, the claims of the '778, '226 and '566 Patents require, in one form or another, "*cord passages* extend[ing] at *fixed angular orientations*

relative to the outrigger." Appx84; Appx101; Appx119 (emphasis added). The district court ignored these critical differences when finding wholesale noninfringement of all Asserted Patents. Appx4-5.

Rupp does not —and cannot—defend a limitation-by-limitation basis for summary judgment as to each Asserted Claim. The Order evaluated only claim 1 of the '632 Patent, extended a legally incorrect "movement" requirement—imported into the claims of the '632 Patent—to the other Patents that plainly do not include the housing-and-fastener language.

Rupp attempts to rely on Examiner commentary from the '778 Patent prosecution to assert the claims of the '632 Patent require "no movement." Rupp's Opposition, CAFC Dkt. 9 ("Red.Br.") at 46. First, these Examiner comments pertained to the "fixed angular orientation" limitation the '632 Patent plainly lacks. Appx65-68. But even assuming the commentary pertained to the '632 Patent, it still could not support disclaimer, since "it is the applicant, *not the examiner*, who must give up or disclaim" claim scope. *Arendi S.A.R.L. v. Google, LLC*, 882 F.3d 1132, 1135 (Fed. Cir. 2018) (emphasis added).

And the sole portion of the '632 Patent reexamination prosecution Rupp cited, and upon which the district court based its entire disclaimer finding, does not support "clear and unmistakable" disclaimer. Red.Br.46; Appx12. Rather, this passage addressed only how a "fixed angular orientation" of the cord passages could

differentiate over Malin's (prior art) separate, individual pulleys "snapped" onto an eyebolt, which allows the pulleys to independently dangle freely, adopting whatever orientations the respective halyard lines' tension dictate. Appx1271-1273. There is nothing that addressed anything relating to a housing that must have "no movement" or be "directly connected" an outrigger. *Id.* Significantly, the patentee *dropped* this proposed "fixed angular orientation" of cord passages limitation in the '632 Patent, as is not present in the '632 Patent reexamined claims, and instead retained the limitation that the "cord-passages [are] transversely offset from one another." Appx65-68.

Rupp also argues the patentee's statement that "[s]uch 'snap' coupling [in Malin] negates any notion of *defining a plurality of cord passages'* which are *'transversely offset' from one another*" must disallow all movement of the housing relative to the outrigger and requiring a "direct, fixed" connection. Red.Br.41, 46. But it is clear the patentee was describing only how the "*cord passages*" align "'*transversely offset*' from one another," versus Malin's individual pulleys that separately "snap[]" onto the eyehook like "one link of a metal chain may hook to another link of the chain," and thus disjointedly and freely hang until halyard lines are tensioned. Appx1272. This is not disclaimer, especially involving "movement" of the housing, or that the housing must be "directly connected" to the outrigger. At best, the statement distinguishes a configuration of independently attaching separate,

distinct pulleys lacking a collective transversely offset cord passage arrangement, which allows the pulleys to independently freely dangle until tensioned by respective halyard lines. It does not clearly and unmistakably disclaim configurations where a housing may move under load while the claimed cord passages remain transversely offset, as Rupp contends. At most, these prosecution statements are ambiguous and "amenable to multiple reasonable interpretations" and thus cannot establish disclaimer. *Genuine Enabling Tech. LLC v. Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022).

Even assuming, *arguendo*, the "fixed angular orientation" limitation discussed during the '632 Patent reexamination pertained to movement, it still does not mean every part of Rupp's Pulley Clusters must be immovable under all Asserted Claims. And the district court never considered whether Rupp's Pulley Clusters' "cord passages" maintain the "fixed angular orientations" relative to the outrigger, as required in the '778, '226 and '566 Patents. *See* Appx2-14; Appx84-85; Appx101-102; Appx119-121.

Rupp also incorrectly treats GEM's technical expert's deposition testimony as dispositive proof all claims require a housing "directly connected" to the outrigger with "a fastener," including the claims of the '778 and '226 Patents that have no

"housing" or "fastener" limitations whatsoever.[1] Red.Br.47; Appx84-85; Appx101-102. But this testimony cited by Rupp related to GEM's expert's rebuttal invalidity report regarding how the claimed "housing" in the '632 Patent could be distinguishable over prior art. Appx5892-5894. Even if relevant, this testimony cannot rewrite the plain language of the claims to require a "direct connection" between the housing and outrigger when no such requirement exists, nor can it rewrite the claims of the '778 or '226 Patents to require "a housing" be "directly connected" with "a fastener" where no claim mentions "a housing" or "a fastener."[2] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("[A] court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves….") (quotations omitted); Appx84-85; Appx101-102.

Even further assuming, *arguendo*, the '632 Patent claims require a "direct connection" as Rupp contends, Rupp does not dispute its Pulley Clusters *without Stems* "directly connect" with a fastener. And similarly, for Rupp's Pulley Clusters *with Stems* (whether loose or tight), the district court never explained how they would still not satisfy this "direct connection" requirement. There is nothing in the intrinsic record that would preclude a "stem" connected to the "housing" from

---

[1] The '566 Patent claims include "a housing portion" and "a releasable fastening portion," but still do not have any "direct connection" requirement.

[2] *See fn. 1*

meeting Rupp's incorrect "at least one fastener" that "directly connects" requirement—i.e., the "stem" is the fastener that "directly connects" the housing to the outrigger. In fact, FIGs. 3 and 3A of the Asserted Patents contemplate this exact configuration, and GEM's evidence supports a finding that Rupp's Pulley Clusters *with Tight Stems* are consistent with those disclosed embodiments and satisfy the limitations of the Asserted Claims. Appx56-57; Appx2898-3899, Appx3905-3909, Appx3932 (¶¶94, 101, 104, 106, 158).

Rupp further created a requirement that the "cord passages" must be "on the outer side of the pulley wheel or on the side opposite the outrigger." Red.Br.15, 26. While it is unclear whether the district court based noninfringement on this contention (Appx7), nothing in the intrinsic record supports such requirement. For example, regarding "cord passages," the '632 Patent claims only:

> each of said cord management units defining a plurality of cord passages transversely offset one from the other, said cord passages respectively receiving predetermined ones of said outrigger cords to maintain independent longitudinal displacement thereof relative to the outrigger structure.

Appx68.

Rupp additionally contends the district court found noninfringement because GEM failed to provide evidence of direct infringement by a third party and did not demonstrate how the outcome would have been different but-for the district court's construction and disclaimer findings. Red.Br.45-48. This is wrong. The district

court's noninfringement findings were explicitly "…in view of the manner of operation of Defendant's products as explained below…" Appx9. And that "view" was based on legally improper disclaimer and importation of limitations into the claims. Appx9-12. An analysis conducted under the proper "view" would necessarily come out differently. Under GEM's proffered construction, based on the plain and ordinary meaning of the '632 Patent claim language, accused products need not be directly fastened to an outrigger in any specific manner, and ordinary operational movement does not categorically defeat infringement.

While Rupp is correct the district court was not required to construe *all* disputed terms (Red.Br.45-47), the district court was required to construe the disputed terms central to its noninfringement findings. *See AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) (Vacating summary judgment of noninfringement when district court failed to construe key disputed terms, since "[i]t is critical for trial courts to set forth an express construction of the material claim terms in dispute."); *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 707 (Fed. Cir. 2012) ("[When] dealing with an issue of law like claim construction… this court must be furnished 'sufficient findings and reasoning to permit meaningful appellate scrutiny.'"). The cases Rupp cited do not hold otherwise. Red.Br.45, 47. Rupp relied on *Blue Gentian, LLC v. Tristar Products, Inc.,* 70 F.4th 1351, 1358-59 (Fed. Cir. 2023), a case involving inventorship, for the

premise that claim construction is not necessary in matters of infringement. Red.Br.45. But the Court there held "it is under no obligation to address other potential ambiguities ***that have no bearing on*** the operative scope of the claim" ***only where*** "a district court has resolved the questions about claim scope that were raised by the parties." *Blue Gentian*, 70 F.4th at 1359 (emphasis added). Here, the district court never resolved any of the Parties' claim scope disputes; yet the Order shows the scope of a disputed term was squarely relevant. *See* Appx2349-2365.

In the end, the district court found noninfringement across four distinct patents without (a) identifying specific claims, (b) comparing Rupp's Pulley Clusters against each limitation of those claims, or (c) establishing any absence of evidence as to each limitation. For example—ignoring the fact the Karpanty Declaration does not explain the type or amount of movement he professes is present in Rupp's Pulley Clusters—the district court never explained how purported movement of the housing negates the "*cord passages* [that] extend at *fixed angular orientations* relative to the outrigger" limitation found in the '778, '226 and '566 Patents.

Because the district court's noninfringement findings rested on a legally improper *de facto* construction that erroneously imported limitations into the claims and found disclaimer, the district court committed legal error subject to *de novo* review. For this reason alone, the Order and Final Judgment should be vacated and remanded, if not reversed.

## B. The District Court's Substantial Noninfringing Use Analysis was Legally Wrong

Like the district court, Rupp never addresses whether Rupp's actual accused Pulley Cluster products have any substantial noninfringing use. Rupp's abstract "proof" that its Pulley Clusters *could be* put to some other use does not establish, as a matter of law, that Rupp's Pulley Clusters have an *actual* and *substantial* noninfringing use. The relevant product is the Pulley Cluster designed, offered, marketed, and sold by Rupp, and as used by end users—not an imaginary, generic pulley divorced from the real-world product and record.

This Court's precedent in *Ingevity Corp. v. BASF Corp.*, 166 F.4th 1324, 1334 (Fed. Cir. 2026) confirmed that to constitute a staple article under 35 U.S.C. § 271(c), a product must "have ***actual*** and ***substantial*** non-infringing uses," "focus[ing] on the ***real way*** in which the ***accused product*** is made, used, and sold." (emphasis added) (citation omitted). *Ingevity* further reiterated *Vita-Mix Corp. v. Basic Holding, Inc.*'s mandate that "to be 'substantial,' the alleged non-infringing uses may not be 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'" *Ingevity*, 166 F.4th at 1334 (quoting *Vita-Mix*, 581 F.3d 1317, 1327 (Fed. Cir. 2009)). Rupp ignores this law. Red.Br.20. Rupp reiterates only the alleged genericness of pulleys as a class underpins substantial non-infringing use, asserting "GEM conceded that those products can be used independently of outriggers because, after all, they are simply pulley blocks with two (2) and (3) sheaves,

respectively." Red.Br.2. But GEM acknowledged only a hypothetical possibility, not any substantial noninfringing use. Appx7494 (Tr. 34:22-24).

GEM's evidence shows Rupp designed, marketed, and sold the Pulley Clusters only for multiple-halyard-line rigging that necessarily practices the Asserted Claims. Rupp's proposed hypothetical alternatives do not establish *actual* and *substantial* noninfringing use as a matter of law. *See* Red.Br.17-18. As Rupp admits, a "substantial" noninfringing use "must not be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." Red.Br.39 (citing *Vita-Mix*, 581 F.3d at 1327). Still, Rupp ignores this law, arguing that because users "could" possibly use Rupp's Pulley Clusters in a hypothetical noninfringing manner, it constitutes a "substantial non-infringing use." Red.Br.40. But that is not the law.

#### i. <u>**Rigging Diagrams**</u>

Rupp cites an illustrated rigging diagram as exemplary of how "Rupp's accused pulleys are marketed for use in noninfringing ways...." Red.Br.40. However, such depiction not only fails to establish any ***real way*** Rupp's Pulley Clusters are used, but contradicts Rupp's later argument that Rupp's rigging diagrams are irrelevant since they "do not show pulleys." Red.Br.48. Nevertheless, Rupp's diagram does not establish "substantial noninfringing use," as it does not use the outrigger line-management system in its intended and typical manner, and Rupp could not provide evidence of even a single end user using Rupp's Pulley Clusters

in the depicted manner. *Vita-Mix*, 581 F.3d at 1327 ("the alleged non-infringing uses may not be 'unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.'"); Appx6038 (¶31); Appx3936-3937 (¶¶164-165). Moreover, the Asserted Claims simply do not depend on use, but only that the system is *rigged*, and this rigging diagram meets the limitations of the claims. *See* Appx65-68; Appx84-85; Appx101-102; Appx119-121. So whether a rigging diagram depicts possible use of only a single halyard line, as Rupp argues, is irrelevant, as the claims require only that multiple halyard lines *be rigged*, not that all halyard lines be simultaneously *used*.

Those diagrams simply do not establish substantial noninfringing use. Most depict multiple rigged halyard lines with necessary retention devices, and GEM's evidence permits a jury to find the depicted customary rigging satisfies the relevant limitations of the Asserted Claims. *See e.g.,* Appx5099-5105. And the rigging diagrams showing a fully rigged outrigger with multiple halyard lines and retention devices, but not all halyard lines simultaneously "used," are further belied by GEM's record evidence that such a use is not using the Pulley Clusters for their intended purpose, would be unusual, and is not "substantial," thus creating a material factual dispute. *See Vita-Mix*, 581 F.3d at 1327; CAFC Dkt. 8 ("Blue.Br.") 60-63; Appx3890 (¶81), Appx3936-3938 (¶¶164-165)); Appx3407 (¶¶65-66), Appx6626 (¶¶65-66).

### ii. <u>Marketing Materials</u>

Rupp's reliance on purported marketing photos similarly fails. Red.Br.40 (citing Appx5483-5484). These photos do not show any noninfringing ***use*** because they do not show any ***use*** at all. For example, the first photo (Appx5483) does not show the system rigged with halyard lines. Without them, Rupp's Pulley Clusters are not usable for anything. In fact, Rupp's President, Scott Rupp, explained that Rupp's Pulley Clusters are to be "used as part of the halyard line system" and Pulley Clusters with no halyard lines are not "in use." Appx3407 (¶¶ 65-66); (Appx6626 ¶¶65-66) ("undisputed"). Likewise, the second photo (Appx5484) is a grainy photo without context. From that photo, one cannot determine whether the pulley cluster purportedly depicted is an accused Pulley Cluster (e.g., how many pulley sheaves does that Pulley Cluster have), let alone how many halyard lines there are or at what point during the rigging and installation process the photo was taken.

There are no limitations to what an accused infringer could advertise how products *could possibly* be used in an effort to avoid contributory liability. The question is whether the Accused Products <u>*are actually*</u> used consistent with Rupp's advertising. *See Ingevity*, 166 F.4th at 1334 (noninfringing use must be "actual and substantial" and "focuses on the real way in which the accused product is made, used, and sold.") (quoting *Bio-Rad Labs., Inc. v. ITC*, 998 F.3d 1320, 1336 (Fed. Cir. 2021)). Holding otherwise would absolve contributory infringement liability

anywhere an infringer advertises a product "can" be used in a certain manner, even where it knowingly would never be used that way. A hypothetical capability does not establish, as a matter of law, a commercially meaningful and substantial noninfringing use for Rupp's Pulley Clusters. Rupp identified no evidence from which a factfinder must conclude its proposed alternative uses are customary, practical, or commercially significant rather than theoretical or occasional.

In fact, GEM's expert testified to the contrary that single halyard rigging and use is uncommon and would be inconsistent with the way Rupp's Pulley Clusters were designed and intended to be used. Blue.Br.60; *see Vita-Mix*, 581 F.3d at 1327. This alone created an issue of material fact precluding summary judgment.

**iii. <u>Hypothetical Uses</u>**

Rupp's reliance on the exchange between GEM's counsel and the district court regarding whether Rupp's Pulley Clusters could hypothetically be mounted to a sailboat mast is likewise misplaced. Appx17-18. As GEM's counsel advised the district court, mounting Rupp's Pulley Cluster on a sailboat mast as the district court hypothesized would require modifying the Pulley Cluster, as it is not how it is designed to be used. Appx7494 (Tr. 34:8-25). That exchange confirmed nothing, especially considering the district court framed this as a pure hypothetical—not a real noninfringing use of Rupp's Pulley Clusters, and ***not*** as an inquiry about actual evidence before it. *Bio-Rad*, 998 F.3d at 1336. (noninfringing use must be "actual

and substantial" "focus[ing] on the real way in which the accused product is made, used, and sold.").

Rupp's argument that because its Pulley Clusters use a purportedly common bolt thread, they have substantial noninfringing use, is also misplaced. This, too, relies on hypotheticals, and establishes neither real nor substantial, actual use. Red.Br.40. In the end, Rupp identified no evidence demonstrating a single use of any Pulley Clusters in a noninfringing manner, let alone one that would constitute a "substantial" use. *See Ingevity*, 166 F.4th at 1334.

Rupp's materials, viewed in the light most favorable to GEM, do not compel a finding that the depicted configurations relied on by Rupp are substantial noninfringing uses in any manner. At minimum, the record is replete with factual disputes regarding whether Rupp's cited configurations are real, commercially meaningful, and customary uses of the accused Pulley Clusters, precluding summary judgment.

#### iv. <u>Pulley Cluster Movement and Stems</u>

Rupp's argument its Pulley Clusters have substantial noninfringing uses because they "move" is a red-herring. Red.Br.41. Not only is this argument underpinned by the district court's incorrect claim construction and disclaimer finding, but it does not pertain to substantial noninfringing uses; it pertains only to direct infringement based on the Pulley Clusters' design.

Rupp also contends GEM provided no evidence Rupp actually sells Pulley Clusters *without Stems* or Pulley Clusters *with Tight Stems*. Red.Br.43. First, this ignores contributory infringement liability extends to "***whoever offers to sell*** or sells within the United States…." 35 U.S.C. § 271(c) (emphasis added). GEM need not prove Rupp actually *sold* Pulley Clusters *without Stems* or Pulley Clusters *with Tight Stems*, but only that Rupp *offered to sell* the same. To that end, GEM submitted substantial evidence, including Rupp's own catalog depicting its Pulley Clusters *without Stems* as evidence of Rupp's *offer for sale*. *E.g.,* Appx5201. Second, Rupp's argument ignores the GEM's substantial evidence proving Rupp sells such Pulley Clusters *without Stems*, including that presented during the SJ Hearing. Blue.Br.32-36.

Rupp's reliance on *Commil USA LLC v. Cisco Systems, Inc.* does not resolve the disputed facts here. Red.Br. 47-48.[3] *Commil* recognized that a reasonable different reading of the claims may negate knowledge of infringement. 575 U.S. 632, 642 (2015). But Rupp's "belief" rests solely on its assertion that it sells only Pulley Clusters with *Loose Stems* - GEM's evidence that Rupp actually sells Pulley Clusters *without Stems* and Pulley Clusters *with Tight Stems* negates that assertion, thus disavowing any such "belief." Blue.Br. 32-36. Likewise, *Vita-Mix* affirmed

[3] Rupp cited *Commil* at volume 572 (Red.Br. 47-48); the correct citation is 575 U.S. 632.

summary judgment of no contributory infringement because the undisputed record established a substantial noninfringing use. 581 F.3d at 1327-28 & n.1. This footnote explained that a common noninfringing use remains substantial despite unrelated infringing operations. *Id.* Here, GEM disputed whether Rupp's proposed alternatives are substantial uses of the Pulley Clusters, based on the evidence discussed above.

Lastly, Rupp's implication that requiring end user assembly with other elements renders such use noninfringing is wrong. Appx7474 (Tr. 14:18-25). Rupp is correct a direct infringer must ultimately assemble or use all the claimed elements. But Section 271(c) imposes liability based on the sale of "a component" of a patented "machine, manufacture, combination, or composition," thus presupposing end users' required combination or assembly. The question, instead, is whether the component is especially made or adapted for infringement and lacks substantial noninfringing uses—not whether end users must assemble the component with other elements to effect infringement.

Ultimately, Rupp identified no evidence that any of its proposed hypothetical alternatives are actual, commercially meaningful, and substantial uses of the Pulley Clusters as this Court required in *Bio-Rad* (998 F.3d at 1336), *Vita-Mix* (581 F.3d at 1327), and others, rather than hypothetical capabilities, incomplete configurations, or unusual uses.

### C. The District Court's No Inducement Findings were Legally Wrong

The district court found no inducement because it saw no *single, unitary* instruction or communication from Rupp directing end users to assemble every limitation of the claimed systems. Appx7-8. That is not the law. Inducement may be proven from materials considered *as a whole*; it need not appear in a single, self-contained document. *GlaxoSmithKline LLC v. Teva Pharms. U.S.A., Inc.*, 7 4th 1320, 1327 (Fed. Cir. 2021).

Inducement may also be proven with circumstantial evidence; GEM need not identify every direct infringer by name. *Id.* And for induced infringement, instruction manuals may prove customers directly infringe. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (2017). Where instructions teach an infringing use, those instructions can support an inference of affirmative intent to induce infringement. *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (2010).

Here, the district court found GEM did not prove direct infringement by a third-party based solely on its legally incorrect claim construction, disclaimer and noninfringement findings. Appx9 ("Plaintiff has not, and cannot, *in view of the manner of operation of Defendant's products as explained below*, point to any end user… who has directly infringed the Plaintiff's Patents.") (emphasis added). This was not a standalone evidentiary holding; it was expressly dependent on the district court's legally incorrect product-operation theory. Yet, the evidence indisputably

shows Rupp *explicitly* instructs end users to replace eyebolts on its outriggers with Rupp's Pulley Clusters, and Rupp's rigging instructions then instruct users how to set up and use those outrigger systems, regardless of whether the outrigger has eyebolts or Pulley Clusters. Appx3915-3916 (¶¶124-125); Appx3919-3922 (¶¶131-132). Rupp's rigging instructions are not special; they simply depict the way outriggers are customarily rigged. Appx3880-3881 (¶67); Appx3914-3916 (¶¶123-125). Once Rupp directs users to replace eyebolts with Pulley Clusters, the rigging instructions necessarily teach infringement. Thus, Rupp instructing replacing eyebolts with Pulley Clusters, knowing full well the outriggers will be rigged in the customary and ordinary fashion (that causes direct infringement), is an act of inducement.

GEM identified evidence from which a jury could reasonably view Rupp's inducement based on its instructions as a whole, especially in light of GEM's proffered expert and end-user testimony. GEM's evidence shows that when users follow Rupp's instructions, the resulting system satisfies the Asserted Claims. A jury could find this is precisely the kind of instruction to engage in the infringing use that the Supreme Court identified as affirmative inducement. *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005). The question is not whether every customer follows Rupp's instructions. Instead, where the instructions teach an

infringing use, it is irrelevant that some users may ignore them. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc*., 845 F.3d 1357, 1368 (2017).

Rupp's reliance on *Hikma Pharmaceuticals U.S.A. Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580 (2026), is misplaced. Red.Br.51. In *Hikma*, the pharmaceutical skinny label provided instructions for a legitimate noninfringing use—not some unproven hypothetical. *Hikma* rejected inducement based on speculation about how third parties might interpret the skinny label in light of other disclosed information, but it also rejected the proposition that inducement must be express. *Id.* at 592. *Hikma* reiterated implicit encouragement can be actionable when it is clear to the relevant audience and affirmative. *Id*. Unlike *Hikma*, GEM is not relying on a chain of speculation about how an independent user might interpret Rupp's instructions when understood in light of some label, website, or press release.[4] GEM instead relies on Rupp's explicit instructions to end users—replace eyebolts with Pulley Clusters, then rig the outrigger system in an ordinary and customary way. Under GEM's evidence, the relevant audience would understand those directions as instructing the very configuration the Asserted Claims cover.

[4] The Supreme Court also recognized in *Hikma* there existed alternative explanations, as several challenged skinny label statements were required by statute or generic-drug practice. *Hikma*, slip. op. at 11. There is no comparable statutory duty or practice here.

As the Supreme Court in *Hikma* confirmed with its reliance on *MGM Studios Inc. v. Grokster, Ltd.*, Rupp's conduct here is actionable. *Hikma*, 608 U.S. at 592. In *Grokster*, the Supreme Court held affirmative steps, such as advertising an infringing use or instructing users how to engage in an infringing use, show the intent required for inducement. *Grokster*, 545 U.S. at 936. Rupp has precisely done this.

Rupp's attempt to recast this case as sales of mere staple articles with possible lawful uses is a red-herring. Red.Br.39-44. Unlike contributory infringement, inducement under Section 271(b) is not limited by any substantial-noninfringing use restriction. A product's capability of a noninfringing use does not defeat inducement where the defendant takes affirmative steps to instruct an infringing use. *Ricoh Co., Ltd. v. Quanta Comput. Inc.,* 550 F.3d 1325, 1340 (Fed. Cir. 2008).

### D. The District Court Ignored GEM's Evidence

The Order stated only that "Plaintiff provides no factual opposition to Mr. Karpanty' s description of Rupp Marine's products…." Appx3-4, n.1. This was plainly wrong. *See* Blue.Br.41-52. Compliant with Federal Rule of Civil Procedure 56 and the Local Rules, GEM properly and directly disputed the factual assertions in the Karpanty Declaration as set forth in Rupp's Statement of Material Facts ("Rupp's SMF"). For example, GEM disputed each of Rupp's SMF paragraphs concerning purported "movement" of Pulley Clusters that relied exclusively on the Karpanty Declaration by asserting "disputed," and cited to the specific paragraphs

of GEM's Statement of Additional Facts that provided explicit evidentiary foundation for such dispute. *E.g.,* Appx6028 (¶24), Appx6035 (¶¶1-4). GEM properly responded to each of Rupp's SMF paragraph-by-paragraph, and when disputed, stated "Disputed" and pointed to specific citations for evidentiary support, as required. *See e.g.,* S.D. Fla. L.R. 56.1(b)(2)(B)-(C); Appx6026-6039. These are not "empty" responses. Red.Br.35. They are fact-by-fact, paragraph-by-paragraph identifications of evidentiary defects in Rupp's factual assertions, paired with citations to specific record evidence controverting them, fully compliant with Rule 56 and the Local Rules. *See generally* Appx6027-6039.

Rupp implies it was proper for the district court to ignore GEM's evidence based on unraised, purported noncompliance with the district court's Local Rules. Red.Br.33-34. But this fails for multiple reasons. First, "[i]t is the general rule that a federal appellate court does not consider an issue not passed upon below." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (cleaned up). Rupp never complained below that any of GEM's Responses to Rupp's SMF were noncompliant with any Local Rules, and the district court never held nor ruled that any of GEM's responses were noncompliant, nor did it strike any. For Rupp to merely assume otherwise is improper. Rupp cannot convert arguments the district court never adopted into unreviewed factual findings necessary to affirm summary judgment—particularly where those proposed grounds depend on resolving

contested evidence or drawing inferences against GEM. Thus, interpretation of, and compliance with, the Local Rules is not an issue properly before this Court. *See Morgan v. Principi*, 327 F.3d 1357, 1364 (Fed. Cir. 2003) (declining to address issue "neither presented to nor considered" in the proceedings below).

Yet even assuming, *arguendo*, GEM's responses to Rupp's SMF were somehow not compliant allowing the district court to *carte blanche* ignore all of GEM's responses that factually disputed Rupp's SMF, that still does not explain why the district court ignored GEM's Statement of *Additional* Facts ("GEM's SAF") submitted in opposition to Rupp's Motion for Summary Judgment and Rupp's SMF, as allowed by the Local Rules. S.D. Fla. L.R. 56.1(b)(2)(A)–(D); Appx6035-6039. GEM's SAF directly contradicted many of Rupp's SMF, necessarily creating numerous disputed material facts precluding summary judgment in Rupp's favor. Appx6035-6039. And the fact Rupp then disputed many of GEM's SAF that GEM filed in direct opposition to Rupp's motion for summary judgment of noninfringement further evidences the existence of many material fact disputes, precluding summary judgment as a matter of law. *See* Appx7325-7335.

Further, Rupp's attempt to silo and divorce the evidentiary record from the summary judgment motion under which such evidence was first filed is improper. The district court's Order is titled "Order on ***Cross*** Motions for Summary Judgment." Appx2 (emphasis added). The Order further stated:

> ***The facts relevant to determining these questions*** [of infringement] are set forth below. ***[The facts] are derived from the Parties' respective Statements of Material Facts and responses thereto***, ***filed contemporaneously with the Motions for Summary Judgment*** (DE 151, 154, 166, 169, 176, 182), and are undisputed unless otherwise noted.

(Appx3) (emphasis added). The district court expressly considered the Parties' respective cross-motions and *all evidence* together on a single, unified record. Therefore, all evidence submitted with GEM's Motion for Summary Judgment of infringement was also germane to Rupp's Motion for Summary Judgment, and necessarily raised issues of material fact precluding granting summary judgment of noninfringement in Rupp's favor.

### E. Rupp Created the Subcategories of the Accused Product it Now Calls "New"

Rupp also argues GEM "presents a new case" built on subcategories of Rupp's Pulley Clusters GEM "never presented to the district court in the summary judgment record." Red.Br.28-31. Rupp is wrong. Rupp's "new theory" label cannot erase evidence and arguments actually presented in the summary-judgment record; the question is whether the district court had a fair opportunity to address the issue, not whether Rupp prefers a different label for the same accused products.

GEM always litigated this case with reference to Pulley Clusters *with Tight Stems* and Pulley Clusters *without Stems*, including evidence introduced in the summary judgment record, summarized below:

| **Pulley Cluster Category** | **GEM's Cited Evidence** |
|---|---|
| *Pulley Clusters without Stems* | Rupp catalog depicting Pulley Clusters *without Stems*. Appx5201, Appx3402 (¶22);<br><br>Rupp social media posts and marketing depicting Pulley Clusters *without Stems*. Appx3401 (¶15) (citing Appx4740, Appx4767-4770, Appx4773-4786), Appx3402 (¶22) (citing Appx4737), Appx3904 (¶99), Appx3902 (¶98), Appx6027 (¶1);<br><br>Rupp's website and emails describing "Swivel Assembly" as separate, add-on accessory (Appx7449); Appx7450-7451;<br><br>Rupp's invoices confirming only 47 stems were ever sold, Appx7452-7453, Appx7500 (Tr. 40:6-9);<br><br>GEM's expert infringement analysis, Appx3898-3904 (¶¶94-99) |
| *Pulley Clusters with Tight Stems* | Pulley Cluster *with Tight Stems* in original packaging the district court observed "does not move at all," Appx7505 (Tr. 45:1-3);<br><br>Rupp's counsel's concession he "would have to inspect" the Pulley Clusters *with Tight Stems* to assess infringement, Appx7504 (Tr. 44:18-24);<br><br>¶¶2-5 of GEM's Statement of Additional Facts, Appx6035;<br><br>GEM's expert analysis of Pulley Clusters *with Tight Stems*, Appx3896-3899 (¶¶91, 94), Appx3905-3909 (¶101, 102 104, 106), Appx3932 (¶158), Appx3402 (¶23), Appx6035 (¶2), Appx6035 (¶3), Appx6039 (¶40), Appx3886-3909 (¶¶74-107);<br><br>Rupp catalog photo of Pulley Cluster *with Tight Stems*, Appx3405 (¶44), Appx5073, Appx5091-5093;<br><br>GEM's motion for reconsideration mapping evidence against the Karpanty Declaration. Appx7420-7421; Appx7414-7432. |

An issue is not waived when presented to the district court "in such a way as to afford the district court an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990).

It was Rupp that introduced, for the first time, a demonstrative of a Pulley Cluster *with Loose Stems* as noninfringement evidence during the January 7, 2026 SJ Hearing, thus creating product subcategories. Appx7503-7504 (Tr. 43:14-44:7). In rebuttal, GEM's counsel advised the district court Rupp's Pulley Clusters *with Loose Stems* were not representative of Rupp's products at issue. Appx7485 (Tr. 25:11-14), Appx7503-7504 (Tr. 43:14-19, 44:1-7). GEM's counsel then presented the district court with Rupp's Pulley Cluster *with Tight Stems* still in its original, sealed packaging—as Rupp actually sells it—and the district court observed that the stem on that unopened, as-sold unit was tight and "[does not] move[] at all." Appx7485 (Tr. 25:15-18); Appx7505 (Tr. 45:1-3); Blue.Br.37-38. During the SJ Hearing, GEM's counsel also presented documentary evidence showing Rupp actually sells Pulley Clusters *without Stems* and Pulley Clusters *with Tight Stems*. Appx7452-7453; Appx7500 (Tr. 40:6-9).

The district court's confusion during the SJ Hearing as to what product Rupp actually sells, by itself, created disputed material facts precluding summary judgment in Rupp's favor. Appx7503-7504 (Tr. 43:13-19, 44:1-7). But without any

explanation, the district court brushed aside Rupp's Pulley Clusters *with Tight Stems* in the original packaging GEM's counsel presented during the SJ Hearing, and all other evidence regarding Rupp's Pulley Clusters *with Tight Stems* and Pulley Clusters *without Stems,* and based its noninfringement findings solely on the Pulley Cluster *with Loose Stems* presented by Rupp's counsel during the SJ Hearing. Appx12, n.4.; Blue.Br.36-40.

Rupp further conflates GEM's *conditional* concession as to Rupp's Pulley Clusters *with Loose Stems* as a purported waiver of Pulley Clusters *without Stems* and Pulley Clusters *with Tight Stems*. Red.Br.30. Yet GEM expressly stated it is "not appealing whether Rupp's Pulley Clusters *with Loose Stems* infringe the Asserted Claims, *as this is not a category of products Rupp commercializes*" and "Rupp's other categories of accused products *are subject to this appeal*." Blue.Br.13-14 (emphasis added).

As the summary judgment movant on noninfringement, it was Rupp's burden to establish the absence of a genuine dispute regarding how the products *it actually sells* operate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A sole demonstrative of a Pulley Cluster *with Loose Stems* that Rupp presented during the SJ Hearing —divorced from it original packaging and modified by Rupp's counsel (Appx7485 (Tr. 25:11-14), Appx7503-7504 (Tr. 43:14-19, 44:1-7))—and which the district court relied on as dispositive of all products Rupp sells (Appx12 (n.4)),

cannot substitute for the requisite Rule 56 factfinding or legally required record supported limitation-by-limitation infringement comparison, nor can it carry Rupp's burden for summary judgment of noninfringement. This is especially true considering the district court's admitted uncertainty about the actual products Rupp sells. Appx7503-7504 (Tr. 43:13-19, 44:1-7).

### F. The District Court Never Addressed GEM's Objections to the Karpanty Declaration Admissibility

Rupp contends GEM "never separately moved to exclude the Karpanty Declaration in connection with Rupp's summary judgment motion" and GEM's motion *in limine* "addressed trial evidence" only. Red.Br.31-32. Rupp is wrong. At every turn, GEM objected to the admissibility of the statements in the Karpanty Declaration and argued they cannot legally support Rupp's Motion for Summary Judgment.

In opposition to Rupp's Motion for Summary Judgment, GEM devoted pages addressing and arguing on a paragraph-by-paragraph basis, the assertions made in the Karpanty Declaration were inadmissible since they were evidentiarily hollow, lacked foundation, improperly proffered lay opinions on core technical expert issues relating to infringement, or otherwise were insufficiently supported to dispute the contrary evidence under Rule 56(c)(4). Appx6003-6009. In fact, GEM expressly argued to the district court the "Karpanty Declaration should be stricken" as improper. Appx6006. Other than baldly asserting a declaration can be based on

personal observations and relying on misplaced law (Appx4, n.1; Blue.Br.43), the district court never addressed any of GEM's objections to the Karpanty Declaration, let alone provided sufficient "findings and reasoning to permit meaningful appellate scrutiny." *OSRAM*, 701 F.3d at 707; Appx2-Appx16.

Even ignoring the evidentiary issues GEM raised, Rupp's argument that GEM's motion *in limine* concerning the Karpanty Declaration "addressed trial evidence" only is a red-herring. Summary judgment must "set out facts that would be admissible in evidence," and a declarant must be "competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322–24 (11th Cir. 1999). Requiring a district court to consider admissibility before granting summary judgment is not a procedural formalism; it is a substantive limit on what a party may use to support summary judgment. If a declarant's statements would be inadmissible at trial, they cannot supply the movant's evidentiary showing at summary judgment. *See* Fed. R. Civ. P. 56(c)(4); *Macuba*, 193 F.3d at 1322–24.

### G. The Record Contains Ample Evidence of Direct Infringement

To satisfy the direct infringement requirement, the patentee "must either point to specific instances of direct infringement ***or show that the accused device necessarily infringes the patent in suit***." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012). GEM met that standard many times over.

Rupp characterizes GEM's technical expert, John Lloyd, as offering only

bare, conclusory opinion about how Rupp's products "might" be used. Red.Br.37-38. The record says otherwise. Mr. Lloyd's infringement report and testimony provided detailed, claim-by-claim infringement analyses grounded in (a) the physical structure of the Rupp's Pulley Clusters, (b) Rupp's instructions, (c) Rupp's admissions, (d) his personal observations and experience with Rupp's Pulley Clusters over the years, (e) end-user testimony, and (f) the evidentiary record. Blue.Br.60-64; *See e.g.,* Appx3861-3864 (¶¶5-17); Appx3861-3886 (¶¶59-73); Appx3887-3889 (¶78); Appx3890-3893 (¶¶82-85); Appx3898-3905 (¶¶94-100); Appx3938-3941 (¶167-168). That is precisely the circumstantial showing this Court's precedent permits: proof that "the accused device necessarily infringes." *Toshiba*, 681 F.3d at 1363.

End-user deposition testimony independently confirmed GEM's expert showing. For example, freelance fisherman Jose Cortes testified he commonly rigs multiple halyard lines on Rupp's outriggers fitted with Rupp's Pulley Clusters and that, as a matter of routine practice, end users assemble and use them consistent with Rupp's instructions. Blue.Br.64; Appx3406 (¶53), Appx6035 (¶8), Appx5040 (Tr. 42:8-11). Derek Milo, an eighteen-year captain, mate, and deckhand, also testified that a three-halyard-line, three-pulley setup of Rupp's Pulley Clusters on Rupp's outriggers is the "common setup," "what everybody has," and sketched it at his deposition. Appx3406 (¶54), Appx5119 (Tr. 51:10-52:22). Even Rupp's own

witnesses confirmed the standard in-use configurations for Rupp's Pulley Clusters. Blue.Br.63-64. Rupp does not address, distinguish, or dispute a single one of these evidentiary citations.

Rupp's sole response is an unfounded critique that Cortes' testimony "used pulleys that did not have a 'stem,'" and being without stems, Rupp *assumes* the Pulley Clusters must have been modified after purchase or otherwise purchased before 2015. Red.Br.38. That chain of inference is "unsupported attorney argument." *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1380 (Fed. Cir. 2009). There is no evidence the Pulley Clusters Mr. Cortes referenced were modified in any manner for Mr. Cortes to provide testimony identifying a person who made modifications. Indeed, Mr. Cortes' testimony further supports GEM's evidence that Rupp actually sells Pulley Clusters *without Stems*. Section I.E, *supra*.

Rupp's argument only confirms a genuine dispute of material fact. Rupp's conjectured scenarios concerning Mr. Cortes' testimony imply the possibility that Cortes used Rupp's post-2015 Pulley Clusters exactly as sold, without modification. On that scenario alone, Rupp's argument concedes a triable direct-infringement question. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Rupp's resorting to a string of hedged, contingent "if, then" propositions to discredit a fact witness's testimony is perhaps the clearest

demonstration that summary judgment was improper. *See NeuroGrafix v. Brainlab, Inc.*, 787 F. App'x 710, 717 (Fed. Cir. 2019) (genuine dispute of material fact exists where the record leaves open competing factual inferences about how an accused product is used).

Rupp's spin on the Cortes testimony also ignores the wealth of record evidence about actual pulley configurations employed by end-users, whether Pulley Clusters *without Stems* or Pulley Cluster *with Tight Stems*. *See, e.g.*, Appx3406 (¶53); Appx6035 (¶8); Appx5040 (Tr. 42:8-11); Appx3406 (¶54); Appx5059-5060 (Tr. 39:19-40:21); Appx3406 (¶54); Appx5119 (Tr. 51:10-52:22); Appx5108-5109 (Tr. 76:10-77:13). In fact, Derek Milo testified he has never seen Rupp's Pulley Clusters attached to outriggers with any stem, further solidifying GEM's evidence that Rupp actually sells Pulley Clusters *without Stems*. Appx6682 (Tr. 95:15-96:16). And Rupp's own 30(b)(6) testimony confirmed that when Rupp ships disassembled outriggers with Pulley Clusters pre-installed by Rupp, those are Pulley Clusters *without Stems*. Appx5020-5021 (Tr. 40:7-41:16).

## II. CONCLUSION

As discussed above and as set forth in GEM's Opening Brief (CAFC Dkt. 8), the district court committed several errors, any of which requires vacatur and remand, if not reversal. The district court's judgment rests on an erroneous construction, a claim-unspecific and configuration-specific analysis, and resolving disputed evidence against GEM. GEM was not required to conclusively prove infringement to defeat summary judgment. Once GEM identified evidence supporting competing inferences about Rupp's Pulley Cluster configurations, their operational characteristics, and actual end-user rigging and use, Rupp's burden could not be met through a single altered Pulley Cluster *with Loose Stems* demonstrative, generalized descriptions of generic pulleys, or attorney argument about unproven modifications.

Both the district court's claim-scope determination based on claim text and prosecution history, and the grant of summary judgment are reviewed *de novo*, with evidence viewed and inferences drawn in GEM's favor. Under either analysis, the judgment cannot stand. Therefore, the Court should vacate the Final Judgment and grant of summary judgment of noninfringement, and remand for further proceedings consistent with proper constructions and Rule 56 standards. Because the identified disputes are factual and material, those proceedings should include trial.

**Dated: September 14, 2026** **Respectfully submitted,**


/s/ Joseph R. Lanser
Joseph R. Lanser
*Principal Counsel*
Jaimin H. Shah
TAFT STETTINIUS & HOLLISTER, LLP
111 E. Wacker Dr.
Suite 2600
Chicago, IL 60601
Tel. (312) 527-4000
Fax (312) 527-4011
Email: jlanser@taftlaw.com

Charles D. Pfister
TAFT STETTINIUS & HOLLISTER, LLP
40 N. Main St.
Suite 1700
Dayton, OH 45423
Tel. (937) 641-2071
Fax (937) 228-2816
Email: cpfister@taftlaw.com

Alex M. Matthews
TAFT STETTINIUS & HOLLISTER, LLP
One Indiana Square
Suite 3500
Indianapolis, IN 46204
Tel. (317) 713-3500
Fax (317) 713-3699
Email: amatthews@taftlaw.com

***Counsel for Plaintiff- Appellant GEM Products, LLC***

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1817

**Short Case Caption:** GEM Products, LLC v. Rupp Marine, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,998 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.
- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 09/14/2026

Signature: /s/ Joseph Lanser

Name: Joseph Lanser

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically filed the foregoing *Reply Brief For Plaintiff-Appellant Gem Products, LLC*, with the Court's CM/ECF filing system, which constitutes service, pursuant to Fed. R. App. P. 25(c) and Fed. Cir. R. 25(a).

Date: September 14, 2026

*/s/* Joseph R. Lanser
Joseph R. Lanser
TAFT STETTINIUS & HOLLISTER, LLP
111 E. Wacker Dr.
Suite 2600
Chicago, IL 60601
Tel. (312) 527-4000
Fax (312) 527-4011
Email: jlanser@taftlaw.com